Robinson *v.* Robinson.

10  240
88  568

## ROBINSON *vs.* ROBINSON.

Sundry individuals raised by voluntary subscription among themselves, a sum of money to erect a building for an Academy, and then held a meeting, at which they chose one of their number an agent, " to employ workmen, pro-" cure materials," &c. who hired the plaintiff to labour in the erection of said building. *Held,* that, he thereby bound *all the subscribers,* including himself, and that an action might be maintained against all the subscribers *jointly ;* — but that if sued *alone* he could only avail himself of the non-joinder of his co-subscribers by pleading it in abatement.

ASSUMPSIT, on account annexed to the writ, for labour done and performed on the building erected for an Academy in *Newcastle.* It was admitted that the work had been done, and that the sum charged was reasonable, but the defendant denied that he was liable to pay it.

To maintain the action the plaintiff read the following memorandum : —

                      . " *Newcastle, Aug.* 15, 1829.

" $148,13.

           " Due *Nathainel Robinson* for work on the new " *Academy* building in *Newcastle,* one hundred and forty-eight " dollars and thirteen cents.

                " *Ebenezer D. Robinson,*
                    " Agent for the subscribers."

    " (Errors excepted)."

It was also further proved or admitted, that at a meeting of the trustees of Lincoln Academy, *May* 1, 1828, a vote was passed, directing the removal of the Academy to *Newcastle,* whenever a building of a certain description should be there erected and presented to the Institution. Whereupon certain individuals, *May* 24, 1828, by writing under seal, after reciting the above vote, covenanted " to pay the sums voluntarily placed " by them against their respective names, unto *Ebenezer Farley,* " *Esq.* whom they had duly elected their Treasurer for this " purpose, and to any other person who may succeed said " *Farley* in said capacity, one half in three, and the remainder " in six months." The defendant was one of said subscribers

to the amount of $25. The whole sum subscribed was about $1500, which had been paid to said *Farley*, the treasurer. After said subscription, the subscribers met and organised by choosing a chairman and clerk, and a committee of three of the subscribers to direct as to the materials, form and manner of building, and to superintend generally the erection of the building. At the same meeting the defendant was chosen an agent to employ workmen, purchase materials, and generally carry on the work. Afterwards the defendant employed the plaintiff as master-carpenter to do the work charged in the account annexed. At several times during the progress of the building, the plaintiff drew orders on the defendant *as agent of the subscribers*, and on the completion of his work, received from the defendant the memorandum aforesaid.

The defendant never gave any notice to the plaintiff who were the subscribers, or how much was subscribed. But in *Sept.* 1831, before the commencement of this suit, the plaintiff called on the defendant with the memorandum aforesaid and requested payment, when he replied, that there were no funds to pay the same — that a sufficient sum had not been subscribed to pay for all the work done on the building. And on being further inquired of as to the names of the subscribers, he replied that he could not state who they were, as he had no control over the paper.

Upon these facts it was agreed, that if in the opinion of the Court the action was maintainable against the defendant, the nonsuit which had been entered by consent, was to be taken off, and the defendant defaulted, otherwise the nonsuit was to stand.

*Sheppard*, for the plaintiff, argued that the defendant was liable on the ground, 1. that he contracted with the defendant to do the labour, without disclosing *at the time* who was his principal, — and afterwards refusing to give the names of the subscribers when expressly inquired of to that effect. *Maure v. Hefferman*, 13 *Johns. R.* 58; *Rathbon v. Budlong*, 15 *Johns. R.* 1.

2. Because he transcended his authority, by incurring expen-

ses beyond the amount of the funds — this makes him *personally liable*. *Gill v. Brown*, 12 *Johns. R.* 385 ; *Pothier on Contracts*, 1, 41 ; *Comyn on Con.* 1, 248 ; *Sumner v. Williams*, 8 *Mass.* 162 ; *Abbot on Shipping*, 100 ; *Schimmelpennick v. Bayard & al.* 1 *Peters*, 264 ; *Arpidsan v. Ladd*, 12 *Mass.* 173.

The memorandum may be a mere certificate or evidence of an *insimul computassent*. But if it be any thing more, it is the promise of the defendant, and the word *agent* is used merely as *descriptio personæ*. *Long v. Colburn*, 11 *Mass.* 97 ; *Damon v. Granby*, 2 *Pick.* 345.

If the defendant say that the action should have been against all the subscribers, the reply is, that it is too late for him to avail himself of that objection, he should have pleaded it in abatement.

*Allen*, for defendant, contended that, the defendant contracted as the *agent* of the subscribers. He had no intention of charging himself, nor had the plaintiff, any intention at the time to charge him. The plaintiff well knew in what capacity the defendant was acting, as appears by the orders which he drew while he was performing the work. If the defendant was authorised to sign the memorandum produced by the plaintiff, then surely he is not answerable on it personally. If he was not authorised to sign it, then the action should have been a special action on the case and not *assumpsit*.

To show that the defendant was not liable under the circumstances of this case, he cited the following authorities : *Bainbridge v. Downing*, 6 *Mass.* 253 ; *Mann v. Chandler*, 9 *Mass.* 335 ; *Tippets v. Walker*, 4 *Mass.* 595 ; *Emerson v. Providence Hat Manufactory*, 12 *Mass.* 237 ; *Odiorne v. Maxcy*, 13 *Mass.* 178 ; *Williams v. Mitchell*, 17 *Mass.* 98.

MELLEN C. J. delivered the opinion of the Court.

It appears that the defendant was one of the persons who signed the subscription paper, and subscribed $25 towards accomplishing the object expressed therein ; and that afterwards, and before the plaintiff commenced working on the building, at a meeting of the subscribers, he was chosen an agent " to " employ workmen, purchase materials, and generally carry on

" the work ;" and that the defendant afterwards employed the plaintiff as master-carpenter, and he performed the work for which he seeks payment in this action. Having the above-mentioned authority, the defendant, by the contract made with the plaintiff, bound all the subscribers, and himself among the rest ; and the plaintiff might have maintained an action against all the subscribers *jointly* ; for they were all *joint promissors ;* instead of doing which, he commenced the present action against *only one* of the subscribers. The action might have been defeated, if the defendant had pleaded *in abatement* the non-joinder of the *other* subscribers, as co-defendants ; but he has lost the opportunity of availing himself of this objection, by pleading the general issue. The principles above stated are perfectly clear, and their application is familiar in practice. When the parties examined their accounts, on the 15th of *August*, 1829, and the certificate of the amount due to the plaintiff was given to him, the defendant still acted as agent of the subscribers. It is perfect justice that the plaintiff, who has done the labour, should be paid for it. It may operate hardly on the defendant to be compelled to pay the whole sum due, still, as one of the joint contractors, he was liable, and each was liable for the whole. It may be unfortunate that he lost his opportunity to defeat the action, still, he must blame himself ; and if he has any remedy against the other subscribers for contribution, he must resort to that or bear the loss himself. We are all of opinion that the action is maintained. A default must be entered according to the agreement of the parties.

*Defendant defaulted.*