### CLARK *v.* O'ROURKE.

1. UNINCORPORATED SOCIETIES — LIABILITY OF MEMBERS — CONTRACTS.

Members of a church organization having no legal existence, who are directly instrumental in incurring liabilities for it, or who authorize or ratify transactions made in its name, are personally liable, while those members who do not in any way participate in such transactions are exempt from liability.

2. SAME — BUILDING COMMITTEE.

The members of a building committee of such an organization, who have charge of the work of constructing a church building, are personally liable for materials furnished to them for such purpose, although the account was charged in the name of the society, and although the seller was informed

that the church intended to raise the necessary funds by a church fair and by individual subscriptions.

3. ASSUMPSIT—COMMON COUNTS—OPENING OF COUNSEL—ISSUE.

A judgment, on verdict directed by the court, against members of an unincorporated church society on obligations incurred therefor, will not be reversed because counsel, in his opening statement, relied on the liability of defendants as agents of a principal having no legal existence, although this ground was not conclusively established, where the declaration was on the common counts, and the defendants were clearly liable by reason of their relationship to the society itself; the latter ground of liability being equally within the declaration.

4. APPEAL—NON-JOINDER OF DEFENDANTS—OBJECTIONS.

The objection that others, not made parties, are jointly liable with defendant, cannot be raised for the first time on appeal.

Error to Ontonagon; Hubbell, J., presiding. Submitted October 7, 1896. Decided December 9, 1896.

*Assumpsit* by Orange M. Clark and others, copartners as Clark, Farnham & Company, against Charles O'Rourke and James Norton, for goods sold and delivered. From a judgment for plaintiffs on verdict directed by the court, defendants bring error. Affirmed.

In 1892 an unincorporated Catholic society was formed in Ewen, Ontonagon county, and erected an edifice. Plaintiffs were dealers in lumber, and furnished the lumber with which the building was erected. Defendants were trustees for the society, and members of the building committee, having entire charge of the work. The plaintiffs contended in the court below that the defendants represented no legally organized society, and, in the eye of the law, must therefore be held to have contracted in their own right. At the conclusion of the testimony, the court below directed a verdict for the plaintiffs. The learned counsel for the defendants concede the rule, but insist that it is a rule of presumption only, and does not obtain where the parties have otherwise agreed. They

insist that there was testimony from which the jury might properly infer that the plaintiffs did not look to the liability of the defendants, but agreed to look to other sources, or, in other words, that the credit was not extended to the defendants. This presents the sole question in the case. The testimony on the part of the plaintiffs tended to show that the defendants belonged to the society; that they were trustees and members of the building committee; that defendant Norton went with the priest to the plaintiffs', and ordered the goods, and agreed to see that the bill was paid; that the account upon their books was styled "Catholic Church;" that Mr. O'Rourke was instrumental in making payments upon the account, and that he at one time ordered some material of the plaintiffs, and told them to furnish lumber to the contractor who was building the church, and that it would be all right, that it would be paid; that, after the lumber was furnished, a dispute arose as to the amount, and the defendants wanted a reduction; that they said they were to take care of the bill, and wanted to make arrangements to pay it. The defendants denied the express promise to pay. Norton testified that he introduced the priest to the plaintiffs, and left them. Mr. O'Rourke testified that he had nothing to do with the original order; that he at one time went with the carpenter to the plaintiffs' yard, and selected material for the building. The priest, a witness for the defendants, gave the following testimony:

"I am a Catholic priest. I remember the time when the Catholic church was built at Ewen. It was in October, 1892. Prior to the building of the church, I went to buy some lumber. I made out a list, and gave it to the lumber dealer. I made the plans and specifications myself, and figured out the lumber bill. The lumber and other materials for the erection of that church were purchased through the building committee, which consisted of Mr. Shilling, Mr. Norton, and Mr. O'Rourke, and Mr. Tredau,—I believe his name is. I asked Mr. Norton to come along with me to buy the lumber, or something to that effect. I asked him where we could

get the best and the cheapest, and he said Clark, Farnham & Co. would deal as fair as anyone. So I went and ordered the bill. Mr. Norton went with me into the store, and introduced me to Mr. Hatfield. He had told me before that he had no time to stay, and so he left immediately. I read to Mr. Hatfield the bill, and he made out the lumber bill."

Cross-examination:

"I went to the plaintiffs' store on behalf of the congregation. I represented the congregation in spiritual affairs, but in regard to the temporal affairs they had a building committee. I was supposed to be superintending the building, and was working for the congregation. James Norton and Charles O'Rourke were members of the congregation. James Norton knew what I was going to the store for, and Charles O'Rourke must have known of my ordering the lumber the same day or the day after. Charles O'Rourke and James Norton were members of the building committee, and the building committee superintended the building of the church, in connection with my aid. They managed the building affairs, and let the contract for the erection of the building; that is, contracted for the labor. The congregation furnished the material, under the superintendency of the building committee."

One of the plaintiffs said on cross-examination:

"In our talk with the priest, we had a pretty fair understanding how the money was to be raised to pay for the lumber. The church would get up subscriptions, and hold a fair, and raise the money. It is not a fact that we extended the credit to the Catholic church on the statements which were made to us by the priest at that time. * * * I did not know who the Catholic congregation was. I knew there were Catholics there, and that they were congregated for the purpose of forming an organization, and intended to build a house of worship; and I knew we were dealing with them at that time, whoever they might be, through Mr. Norton. We extended the credit as it is charged in these books, to the Catholic society, vouched for by Mr. Norton."

From this testimony it is urged that defendants were entitled to have the case submitted to the jury, upon the

theory that the credit was extended to the congregation as such, and not to defendants personally, and that plaintiffs agreed to look to certain funds to be raised by voluntary subscriptions, donations, and proceeds of fairs.

*Thomas B. Wilson* (*Julius J. Patek* and *Floyd R. Mechem*, of counsel), for appellants.

*Hill & Rood*, for appellees.

GRANT, J. (*after stating the facts*). The church organization had no legal existence. It could neither sue nor be sued. The members of the society were not partners. Those of the society who were actually instrumental in incurring the liabilities for it are liable as either principals, or agents having no legal principal behind them. Members of the society who either authorized or ratified the transactions are liable, while those who did not are exempt from liability. 1 Bates, Partn. § 75; *Ash* v. *Guie*, 97 Pa. St. 493 (39 Am. Rep. 818); *Fredendall* v. *Taylor*, 26 Wis. 286. Many other authorities might be cited, but we refrain from doing so, since defendants concede the law.

The testimony does not justify the conclusion that the plaintiffs agreed to trust to the proceeds of fairs, etc., for their pay. Plaintiffs knew that the society as a society was irresponsible. It was entirely natural that they should inquire the methods by which the money should be raised, but no inference can be drawn from it that they agreed to look to this source alone. Should A. loan B. $100, and B. promise to raise wheat on his farm with which to pay it, B. would not be relieved from payment because he raised no wheat.

Neither can we accede to the proposition that there was evidence tending legitimately to show that the credit was given to this unincorporated and irresponsible society. It was natural that plaintiffs should enter the account upon

their books as they did, but a jury would not be justified in drawing the conclusion from this alone that they agreed to look to such members of this society as they might be able to show authorized or ratified the purchase from them.   In both reason and authority, this is of no particular significance.   The alleged principal was a myth, and the entry means no more than that the credit was given to those forming the association, or to those who stood sponsors for it, and were conducting its business and obtaining the credit.   *Lewis* v. *Tilton*, 64 Iowa, 220 (52 Am. Rep. 436); *Winona Lumber Co.* v. *Church*, 6 S. Dak. 498; *Davison* v. *Holden*, 55 Conn. 103.   These defendants were the active managers, and, with the other two members of the committee, were in sole charge of the work, and, under the law and the facts, were properly held responsible.   The law does not, under such circumstances, leave the creditors to search out the individual members of the society who have authorized the transaction, but holds those liable who have dealt with the creditors in the capacity of agents or principals.

The declaration is upon the common counts, and the plea is the general issue.   The declaration, therefore, includes the liability of the defendants as members of the society, and their liability as agents of a principal having no legal existence.   While counsel, in their opening statement to the jury, appear to have relied upon the latter liability, still we should not feel disposed, under the facts of this case, to reverse the judgment, even if defendants were not liable upon this theory.   There is no doubt of their liability upon the former theory, and it would be technical and unjust to reverse the judgment, and put the plaintiffs to the expense of a new trial, for no other reason than that counsel did not state their case as broadly as they might.

Defendants cannot now raise the question that others, not made parties defendant, are jointly liable with them. If they desired to raise this question, they should have

interposed a plea in abatement. *Robinson* v. *Robinson*, 10 Me. 240.

The judgment is affirmed.

The other Justices concurred.