McKNIGHT v. LOWITZ.

1. CONTRACTS—NONJOINDER OF PARTIES DEFENDANT—MODE OF OBJECTION—ABATEMENT—PLEADING.

Where the nonjoinder of parties defendant in an action on a contract is not disclosed by the record it must be taken advantage of by plea in abatement both where the parties are partners and in cases of other joint debtors.

2. SAME—PLEADING—ABATEMENT—ABSENCE OF PLEA.

Where the evidence showed that others than the defendant were liable on the contract, the plaintiff could still recover, in the absence of a plea in abatement.

3. PLEADING—ABATEMENT.

A plea in abatement must not only point out the error of plaintiff but also indicate the manner of correcting it.

4. SAME.

The technical plea in abatement still obtains in this State, and it is not proper to set up matter of abatement specially in the answer.

5. CONTRACTS—PROFESSIONAL SERVICES—QUESTION FOR JURY.

In an action by an attorney to recover for services, where the testimony of a witness that the reasonable value of the services was a certain sum was modified on cross-examination, *held*, that the question was one for the jury.

Error to Cass; Des Voignes, J. Submitted April 4, 1917. (Docket No. 34.) Decided May 31, 1917.

Assumpsit by William F. McKnight against Elick Lowitz for professional services. Judgment for plaintiff, and both parties bring error. Affirmed.

*William F. McKnight* (*Clarence M. Lyle,* of counsel), *in pro. per.*

*Gore & Harvey,* for defendant.

STONE, J. This is an action in assumpsit brought to recover for professional services as an attorney at law,

alleged to have been rendered by the plaintiff and his late copartner to the defendant in two transactions. The declaration proceeds against the defendant only. It consists of a special count and also the common counts in assumpsit, and alleges the assignment of the claim to the plaintiff by his former partner. The bill of particulars of the plaintiff's demand, which was filed, is as follows:

1908

Sept. 3.   To fees for time spent in consultation with self as to organization of Cass County State Bank; time spent at Cassopolis in effort to induce people to become subscribers to the articles of association; time spent drafting articles of association, attending meeting of stockholders on August 27th and 28th, directing the organization of the bank, electing board of directors, etc.; time spent with self as to purchase of bank property, examining title of same, drafting agreement, etc., in relation to lease of building, etc.................... $200 00

Sept. 3.   To cash, expense on trip to Cassopolis, etc. .............................. 15 00

1910

Sept. 8.   To fees and expense, trip to Los Angeles, Calif., in re settlement with creditors of the Kimmerle Concrete Machinery Co., etc., three weeks.... 650 00

Interest at five per cent. (5%)........ 218 43

                             $1,083 43

The plea was the general issue, accompanied by notice of the statute of limitations. From a judgment on the verdict of the jury for $277.18 in favor of the plaintiff, both parties have brought error.

The plaintiff resided at Grand Rapids. The defendant lived in Chicago, where he was an operator on the

Board of Trade, and had a summer residence on the lake outside the village of Cassopolis, in Cass county, Mich.

The plaintiff gave evidence tending to show that in the summer of 1908 he was employed by the defendant in the organization of a bank at Cassopolis, and that he performed services in effecting the organization of the bank which were worth $200; and there also was evidence that he incurred expenses to the amount of $15.

As to the other transaction: The Kimmerle Concrete Machinery Company was a corporation doing business in Los Angeles, Cal., and had been operated largely under the management of two sons of Charles H. Kimmerle. The defendant and Charles H. Kimmerle were both of them originally stockholders in this corporation, and there was evidence tending to show that they were partners in their investments in the stock of this company. Defendant had not paid in full for his stock, and in July of the year 1910 the corporation had been running behind, and its affairs were in bad condition, and bankruptcy proceedings were threatened. It also appeared that in the spring of 1910 the defendant had formally transferred his stock in said company to one Farrol, an employee of his; but it was said that the major part of the debts of the corporation had been contracted and incurred before this transfer was made, and the question of the liability of defendant as a stockholder was involved. It appeared in evidence that some time in the month of July, 1910, the plaintiff, being at Cassopolis, met defendant and Charles H. Kimmerle and had a general conversation with them concerning the affairs of the Kimmerle Concrete Machinery Company. It was the claim of the plaintiff that it was finally agreed that he and Mr. Kimmerle should go to Los Angeles and investigate the condition of affairs, and try to adjust

the same in the interest of defendant and Kimmerle. The plaintiff, on or about July 25th, being on his way to British Columbia, called, by previous arrangement, at defendant's office in Chicago, and there had further conversation with Kimmerle and defendant, by which it was arranged that, after visiting British Columbia, the plaintiff should proceed to Los Angeles and assist in straightening out the affairs of said corporation. There was some evidence that on this occasion it was agreed that defendant was to pay one-half the expenses of the plaintiff if he made the trip to Los Angeles. Upon that subject, Charles H. Kimmerle testified as follows:

"*Q.* What was said, if anything, in regard to the expenses out there?
"*A.* Well, he was to bear his half of the expense, whatever it was. That was understood in all the talks, and talked."

The evidence tended to show that the plaintiff, on receiving telegrams from Kimmerle, left his business in Victoria unfinished, and proceeded to Los Angeles, arriving there on the evening of August 21st, and there found Mr. Kimmerle and Mr. Ed. Rein, a representative of the defendant and said to be his confidential man of business. There was a good deal of evidence along the line of what was done during the stay of plaintiff at Los Angeles, and it is claimed that he remained there in the employ of the parties until September 5th, when he and Mr. Kimmerle returned to Chicago. There they met the defendant, and there was testimony that the defendant there asked the plaintiff the question: "Well, Mac, how much do I owe you?" And that plaintiff replied that there was more important business than that on hand just then, and proceeded to speak of the business in which he had been engaged in California. There were subsequent conversations in Chicago in which the defendant, as

testified to by plaintiff, among other things, said he would bear half the expenses, using the language:

"Of course, I will stand dollar for dollar with Charlie (meaning Mr. Kimmerle) on his obligation or on this indebtedness, * * * and we will also pay McKnight his fees and expenses out there."

The record shows considerable correspondence between the plaintiff and defendant and Mr. Rein, relating to the matter of the California company subsequent to this conversation. The plaintiff's charges for this trip and services were entered upon his journal as follows:

"September 8, 1910. Kimmerle Concrete Machinery Company, E. Lowitz and C. H. Kimmerle. To fees, time spent at Los Angeles from August 21st to September 8th in settlement with creditors; also procuring stock in hands of Sweet, Collins & Robinson, time spent Secretary Board of Trade Los Angeles, etc., three weeks, $1,300.00."

Some claim was made by defendant, upon the cross-examination of the plaintiff, that the words "E. Lowitz and C. H. Kimmerle" had been added subsequently to the making of the original entry. This was denied by the plaintiff, and the journal was examined by the court and jury upon the trial, and was produced upon the argument in this court. That question was submitted to the jury.

At the close of the plaintiff's evidence, a motion was made by defendant for a directed verdict in his behalf upon the following grounds:

"*First.* For the reason that it affirmatively appears that in the first item stated in the bill of particulars the Cass County State Bank and others are jointly charged upon the plaintiff's books, and by the plaintiff under his direction, for that service.

"*Secondly.* Because it appears beyond contradiction, and is insisted upon by the plaintiff himself and his counsel, that for the services rendered the Concrete

Machinery Company, Elick Lowitz, and Charles H. Kimmerle there was a copartnership between Elick Lowitz and Charles H. Kimmerle and a joint interest between them respecting that service; that such matter was known to the plaintiff McKnight.

"For these reasons it is elementary that the bank must be made a party, on the ground of the one item. It is equally elementary that the plaintiff should have joined as defendants the concrete machinery company and Charles H. Kimmerle in this suit."

The court ruled that the first and second items relating to the services in connection with the Cass County State Bank, in 1908, were, under the evidence, outlawed and subject to the statute of limitations, and finally directed a verdict against the plaintiff as to those claims of services and expenses amounting to $215. This was assigned as error by the plaintiff. The defendant offered no testimony.

There were requests to charge, which were denied by the court, as follows:

The plaintiff requested the court to charge:

"Under the undisputed evidence, the plaintiff is entitled to recover the sum of $650 with interest thereon at the rate of 5 per cent. from February 17, 1911, to date, or a total sum of $799.80, principal and interest."

The defendant requested the court to charge as follows:

"(1) Your verdict must be for the defendant.

"(2) It is undisputed, under the evidence, that the plaintiff charged for services sued upon, jointly, the Kimmerle Concrete Machinery Company, the defendant Elick Lowitz, and C. H. Kimmerle. I charge you that this claim, as appears by the books of the plaintiff introduced in evidence, is a joint claim; that each party thereto should be joined as a defendant. The defendant having been sued individually on said account, I charge you there is a failure of proper parties, and your verdict will be for the defendant.

"(3) It is uncontradicted by the plaintiff's testimony that a copartnership existed between the de-

fendant and Charles H. Kimmerle in regard to the service of the plaintiff in Los Angeles, Cal. I therefore charge you that the members of this copartnership should be made parties defendant, and, the record showing that the defendant is sued individually, I charge you the plaintiff cannot recover in this action, and your verdict should be for the defendant.

"(4) I charge you as a matter of law that the concrete machinery company and Charles H. Kimmerle, under the evidence of the plaintiff, are necessary parties defendant."

There was a motion for a new trial involving these and some other questions. The motion for a new trial was denied. The trial court denied the motion principally upon the ground that, by pleading to the merits, the defendant had waived the right to have co-obligors joined in the action. using the language:

"In my opinion, if persons who ought to have been made codefendants were not joined, the defect should have been taken advantage of by plea in abatement"

—calling attention to the fact that the declaration and pleadings did not disclose joint liability, and for that reason it was only open on plea in abatement.

It is the claim of the defendant that the plaintiff's testimony tended to prove a cause of action against the Kimmerle Concrete Machinery Company, Elick Lowitz, and Charles H. Kimmerle, and, the proof showing no individual contract or liability of the defendant, that the plaintiff cannot recover in this action, saying:

"The plaintiff predicated his case in his declaration solely upon an individual contract with Elick Lowitz. The proof wholly fails."

This question is argued at great length by defendant, and many authorities are cited. In our opinion, the authorities relied upon by defendant do not support the position claimed. It is not accurate to say

there was no individual liability. It may be said there was no sole individual liability of defendant. Conceding that there was evidence tending to show a partnership, as is claimed, between Kimmerle and defendant, and that the indebtedness was a joint one against the Kimmerle Concrete Machinery Company, the defendant, and Kimmerle, under the condition in which we find the declaration and bill of particulars, we are of opinion that the nonjoinder of these parties has been waived; the same not having been pleaded in abatement. Where nonjoinder of defendants, who ought to be joined in an action on contract, is not disclosed by the record, it must be taken advantage of by a plea in abatement. 31 Cyc. p. 175, and note. And this doctrine applies as well to partners as to other joint debtors. Some of the many Michigan authorities upon this subject are the following: *People* v. *Dennis,* 4 Mich. 609, 615 (69 Am. Dec. 338) ; *Ballou* v. *Hill,* 25 Mich. 204; *Hinman* v. *Eakins,* 26 Mich. 80; *Bowen* v. *Culp,* 36 Mich. 224; *Mitchell* v. *Chambers,* 43 Mich. 150 (5 N. W. 57, 38 Am. Rep. 167) ; *Hecht* v. *Ferris,* 45 Mich. 376 (8 N. W. 82) ; *Munn* v. *Haynes,* 46 Mich. 140 (9 N. W. 136) ; *Porter* v. *Leache,* 56 Mich. 40 (22 N. W. 104) ; *Coon* v. *Anderson,* 101 Mich. 295 (59 N. W. 607) ; *Dillenbeck* v. *Simons,* 105 Mich. 373 (63 N. W. 438) ; *Clark* v. *O'Rourke,* 111 Mich. 108 (69 N. W. 147, 66 Am. St. Rep. 389) ; *Schroder* v. *Pinch,* 126 Mich. 185 (85 N. W. 454).

In *People* v. *Dennis, supra,* the declaration did not show on its face whether Benson was a party to the recognizance or not. This court said:

"The evidence on the trial showed that in this case Benson, the principal, recognized jointly with the defendants; but it is well settled that in actions *ex contractu* the nonjoinder of the co-contractor is not a ground of variance, and, unless it appear on the face of the declaration, can only be taken advantage of by plea in abatement"—citing cases.

*Coon* v. *Anderson, supra,* involved a partnership question and the same rule was applied.

In *Schroder* v. *Pinch, supra,* Justice GRANT, speaking for this court, said:

"Defendant was liable as a member of the firm, and no doubt could arise as to plaintiff's right to recover as against the members of the firm. The declaration informed him of the nature of the claim, and he could only take advantage of the nonjoinder of his partner as defendant by a plea in abatement"—citing cases.

Where there is a plea of the general issue, as in this case, and the evidence shows that others than the defendant are liable upon the contract, the plaintiff may still recover against the defendant, in the absence of a plea in abatement. It is elementary that the plea in abatement must not only point out the plaintiff's error, but must also indicate in what manner it may be corrected; or, as it is commonly expressed, the plea must give the plaintiff a better writ. In many of the code jurisdictions, the technical plea in abatement has been practically abolished, the matter in abatement being set out specially in the answer, but such practice does not obtain in Michigan, and never has.

We are not concerned here about the peculiar relationship existing between partners; nor where a judgment has been entered against one defendant only, on a joint obligation, whether he can make the other joint debtors contribute. We are dealing with a matter of practice. While the rule stated is a somewhat technical one, yet it is as old as our common law.

The other alleged errors complained of by the defendant have received attention, and in our opinion they are not well assigned.

Coming to the appeal of the plaintiff, we first note what he claims in regard to the statute of limitations. We do not understand what plaintiff means when he says: "No notice of this statute was given with the

plea of the general issue." This record shows the contrary. Neither does it appear by this record that the plaintiff had an open or mutual account against the defendant. We do not think the court erred in refusing to submit the claim relating to the Cass County State Bank to the consideration of the jury. As the evidence stood, the statute had run. This suit was begun March 26, 1915.

It is next claimed that the court erred in refusing to direct a verdict for the plaintiff for $650 and interest. While the testimony of the witness Kinnane, on direct examination, tended to show that to have been a reasonable amount, this testimony was a good deal modified upon cross-examination, and we think the whole question became one of fact for the jury.

We have examined the other assignments of error of the plaintiff, but think them without merit. We do not think the plaintiff was prejudiced by any of the matters upon which error is assigned. It is apparent that the jury found the contract to be as claimed by the plaintiff, with reference to the California service, and much of what is complained of, at most, could be harmless error.

Finding no reversible error in the record, the judgment of the court below is affirmed.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.