FARM & HOME SAVINGS & LOAN ASSOCIATION, a Corporation, Appellant, v. MRS. F. W. ARMSTRONG ET AL.—85 S. W. (2d) 461.

Court en Banc, July 10, 1935.

*John T. Barker, Rodgers & Buffington* and *Ewing, Ewing & Ewing* for appellant.

*Maurice H. Winger, Leland Hazard, George J. Winger, Albert L. Reeves, Jr.,* and *Walter C. Goodson* for respondents; *Winger, Reeder, Barker & Hazard* and *Meservey, Michaels, Blackmar, Newkirk & Eager* of counsel.

HAYS, J.—This case has recently come to the writer on reassignment. It is an action upon a promissory note executed by Hardin College. It appears that Hardin College was duly incorporated and for many years operated a school for girls and young women at Mexico, Missouri. It was founded by former-Governor Charles H. Hardin, who brought about its incorporation in 1873 and endowed it, and became its first president. The charter was amended in 1926 in a manner presently to be stated.

On May 29, 1929, the college borrowed from the Farm & Home

Savings & Loan Association of Nevada, Missouri, over $300,000 and by its proper officers executed promissory notes therefor and a mortgage to secure the same on the property of the college. Default was made in the payment of interest on the largest note and the principal and interest of the other four. The original petition, framed in five counts, sought judgment against the college and the then acting receiver thereof and also against these individual defendants-respondents for the recovery of some $50,000 interest accrued on the large note and for the principal and accrued interest of the smaller notes, all of which were in default. A decree was also sought foreclosing said mortgage. Subsequently the plaintiff filed its voluntary amended petition by which the college and the receiver were eliminated from the case and also all said notes save one, on which slightly less than $10,000 was due. Thereupon the action proceeded against these defendants-respondents with a view only to obtaining judgment against them jointly and severally on the one note. Thus it appears this suit is evidently a test case seeking to fix personal liability upon these respondents—more than 100 in number.

The respondents filed a general demurrer to the plaintiff's amended petition. The demurrer was sustained by the trial court and, plaintiff declining to plead further, judgment was rendered dismissing the cause. Plaintiff has appealed and the ultimate question for determination on this appeal is whether the petition stated a cause of action against these respondents. On the situation sketched above this proceeding was on motion of appellant advanced on the docket of this court as our files disclose.

The amended petition alleged that the note in suit was executed by "Hardin College, at all times herein mentioned a corporation duly organized and existing under the laws of Missouri." The note is pleaded in haec verba and appears to have been executed by Hardin College alone and in appropriate corporate manner thus: "Hardin College by W. G. Letterman, President of the Board: Attest, B. T. Williams, Secretary." It is alleged that certain shares of the capital stock of the loan company, taken out by the college and pledged as additional security for said note, have been applied as a credit thereon.

The amended petition is very lengthy. A general statement of its substance will probably aid in a readier grasp of the summary we shall give which may unavoidably itself be lengthy. By way of inducement the petition sets out the policy of the Baptist Church denomination, the nature and formation of the Missouri Baptist General Association, a voluntary unincorporated religious society, and pleads in full the amended charter of Hardin College referred to above. And upon these matters of inducement the petition bases its further allegations upon a course of conduct on the part of said

association, pursued under alleged charter rights and powers, which conduct, it is said, rendered these respondents liable for such course as members of the association and acting therefor. From all of which the petition deduces and alleges that the relationship of principal and agent obtained as between the respondents and the college corporation in the borrowing of the money and the execution of said note by the college, and that it was so executed for the use and benefit of the association and these respondents as participating members of that body. The matters of inducement as specifically alleged are as follows:

The Baptist denomination in the State consists of various churches of the Baptist faith, each of which is a separate and distinct body having its own government, congregational in form; the members composing each local church determining all its policies and operating, managing and controlling its affairs. These individual churches with a view to co-operation in promoting, extending and disseminating the Baptist principles in this State have organized said General Association and the same is composed of such members of individual churches as have been elected as delegates thereto by their respective churches. The association as so composed has supervision of missionary, educational and general work of the denomination and makes recommendations to the churches. The respondents were the duly elected representatives and agents of their respective churches in the various meetings of the General Association and with other delegates constituted that body. Said association through said members assumed to and did direct the affairs of Hardin College and the financial affairs of said association.

The amended charter, incorporated in the petition and made a part thereof, sets out the resolution adopted by the then directors of Hardin College interpreting Article I of the original charter (carried forward without change) in which they determined that the purpose of the original incorporators as stated in said Article I could best be perpetuated by placing Hardin College under the direct auspices, patronage and control of the Missouri Baptist General Association as the state-wide organization which "expresses organic and co-operative life of the Baptist denomination in the State" and resolved that the board of directors of the corporation should thenceforth be elected by said association and further resolved that the articles of association of the college be accordingly amended. The amended charter, quoted in part and otherwise given in substance, is as follows:

"Article I. The undersigned (the then directors) their associates and successors hereby agree to organize themselves into an association to be incorporated under the name of Hardin College for the purpose of establishing and continuing an institution of learning for

the education of females, at the City of Mexico, in the County of Audrain, in the State of Missouri. This association shall, by its corporate name, have succession for one thousand years. A majority of the Board of Directors shall be in full fellowship with some Missionary Baptist Church of the State of Missouri.''

The charter provided further: (II) that the board of directors should consist of twenty-one members who should be elected by the Missouri Baptist General Association, or its successors, at annual sessions; (III) the first meeting of the board should be on a stated date following the annual meeting of the association in October, 1926. or as soon thereafter as possible, ''provided said Association should ratify these articles by general vote of the body,'' and subsequent meetings of the board should be held as fixed by the by-laws of the board; (IV) the corporation being for education and religious purposes it was to have no capital stock; (V) that the corporation should have the power to hold lands and personal property for the purpose of maintaining and forwarding the interests of the institution; (VI) that the corporation should have such powers, rights and privileges as appertain to corporations under the general laws of the State of Missouri or inhere in like corporations, and have the power through its board of directors to elect and maintain a faculty for giving instructions in liberal arts, fine arts, and domestic sciences, and in any other studies that the faculty and board of directors may think it wise and expedient to include in the curriculum, through four years of high school and through the Freshman and Sophomore years of the college; (VII) that the board of directors should have the right to enact for its own government all laws and regulations it may deem advisable and not contrary to the charter; (VIII) that between sessions of the General Association the board of directors of the college shall have entire management and control of the affairs of the institution but may commit to the president and faculty all administrative affairs thereof; (IX) that Hardin College should be under the auspices, patronage and control of the Missouri Baptist General Association or its legal successors; (X) that said corporation should hold all its property in trust for the Baptist Denomination as represented by the Missouri Baptist General Association and conduct its affairs according to the best judgment of the board of directors and the best interests of said denomination.

The following is the substance of the constitutive allegations: The General Association authorized, directed and ratified all the provisions of the amended charter and (thereby?) became and remained the equitable owner of all property of the college. In the years 1927, 1928 and 1929, subsequently to the amendment of the charter, the association elected the directors or trustees of the college and through these trustees directed and controlled the affairs of the college, and

authorized and directed the execution of the note in suit by the college all for the benefit and on behalf of said association and these respondents. "By reason of all the aforesaid acts Hardin College became the agent and mere title holder of the Missouri Baptist General Association, and was thereafter authorized by the defendants herein, constituting said Association, and by the other members of said Association to conduct, operate and manage the affairs of Hardin College for the benefit and use of said Association and that such authority included the authority to contract for finances for the operation of said college and the execution of the non-negotiable note sued upon." "Said note evidences money borrowed and used for the purpose of improving, supporting, maintaining and operating said Hardin College on behalf of the individually named defendants constituting the Missouri Baptist General Association and on behalf of said Association for the purpose of refunding the existing indebtedness of said Hardin College. Each and all the defendants have ratified and approved the action of Hardin College in borrowing the money represented by said note."

It clearly appears that the constitutive allegations above are quite general as phrased and are plainly referable to the preceding portion of the petition and wholly dependent upon matters specifically pleaded by way of inducement.

█ "The demurrer admits the truth of all facts properly pleaded, and carries admissions of all inferences that may fairly and reasonably be drawn therefrom. [Martin v. Ray County Coal Co., 288 Mo. 253; Rodgers v. Fire Ins. Co., 186 Mo. 255.] But upon this question the petition as a whole is to be looked to, and a demurrer does not admit as a fact that which the plaintiff contradicts (Searcy v. Clay County, 176 Mo. 493); and a statement made as conclusive or general cannot be held to be unaffected by specific statements of particulars which necessarily enter into, and qualify or limit the general statement." [Anderson v. Drainage & Levee District, 309 Mo. 189, l. c. 203, 274 Mo. 448.] In 49 Corpus Juris, 119, section 111, the same rule is laid down thus: "Where both general and specific allegations are made (in a pleading) respecting the same matter, the latter controls; and the rule is applicable to inconsistent allegations of a conclusion and the special facts from which it is drawn." The respondents invoke this rule and appellant controverts its applicability.

█ Applying the stated rule relative to admissions implied by demurrer, we hold as follows: The relationship of agency and mere title holding relied on by the appellant is purely a conclusion, based solely upon the acts alleged to have been done by the General Association, through respondents, in respect of Hardin College and its affairs. The allegations of such conclusion are in some respects here-

inafter to be noted inconsistent with the specific facts from which the conclusion is drawn, and are in most respects, if not in all, not supported by the specific facts pleaded. Plainly enough it appears that said conclusion is wholly referable to and dependent upon the acts of such of the directors of the college corporation as the General Association may have selected after the re-incorporation, since the directors were in actual control of the corporation—which could function through them only and agents selected by them. It is idle to say that the General Association "authorized and directed" the re-incorporation, for it was without a shred of authority in the premises at that time. Besides that is a matter of no consequence. Nor does it follow, as appellant concludes it does, from the admissions of the demurrer that said association managed or controlled the college in the manner alleged for the benefit and use of said association or of the respondents, or, more especially, that the specific acts pleaded constituted authority from the association to the college corporation for the latter to borrow money and execute the note for or on behalf of respondents or of the association. For these conclusions at which the pleading arrives are not legitimate inferences from any facts specifically pleaded and they are misinterpretations of the charter upon which they are predicated. The term ratificacation is applied in the petition to what was, essentially, no more than acceptance by the association of the powers conferred upon it by the charter (State ex rel. v. Board of Trust of Vanderbilt University, 129 Tenn. 279, 164 S. W. 1. c. 1164), or otherwise it was a mere conclusion. The same term in another connection appears in the allegations that "each and all the defendants have ratified and approved the action of Hardin College in borrowing the money represented by said note." Looking for specific acts that might impliedly lay a basis for the conclusion, we find none. In 21 Ruling Case Law, 923, it is said: "Ratification means adoption of that which was done for and in the name of another; hence the contract at its inception must purport to be the contract of the principal. There can be no ratification where it appears that the person who made the contract was not at the time, and did not profess to be, acting on behalf of the alleged principal." These observations apply also to the alleged authorization to borrow money and execute a note therefor for and on behalf of the respondents. No profession in that behalf was shown or can be implied.

A consideration of the nature and the purpose of the college corporation, and the nature of the General Association and the interests and powers thereof, under the amended charter should be worthwhile. There can be no question but that as originally incorporated Hardin College was organized as an educational institution. The amendment of the charter did not destroy but continued the old cor-

poration for the same primary purpose of education. [Grand River College v. Robertson, 67 Mo. App. 329.] The powers given the General Association by the charter were expressly limited to such as related to the "organic life of the Baptist denomination." It will not be presumed or inferred that the association's or its members' acts were outside the charter powers.

Assuming that the amendment committed to the General Association the indirect control or even complete control of the college corporation, the only legitimate inference from the facts pleaded relative to that matter is that such control was exercised through director-trustees of the former's choosing. If this circumstance would render the corporation a trustee holding the corporate property to the use and benefit of the General Association as *cestui que trust* (the charter says "in trust for the Baptist denomination as represented by the Missouri Baptist General Association"), or to the use of respondents, members thereof, as *cestuis que trustent*—a result which appellant asserts to have ensued—that interpretation should not be placed upon the charter unless it is unavoidable. Such a construction, the association being a religious society, as are the churches from which it derives its functions, would render void the charter provision certainly, and the entire charter possibly, as being in violation of both constitutional and statutory limitations. Article II, Section 8, of the Constitution declares "That no religious corporation can be established in this State, except such as may be created under a general law for the purpose only of holding the title to such real estate . . . for church edifices, parsonages and cemeteries." Such construction would also render the amendment not germane to the original charter but subversive of the purpose thereof, contrary to the general law under which the amendment was made (Sec. 10268, R. S. 1919), which conditions amendments upon their being germane to the charter that they amend. Interpreting this feature of the amendment as conferring upon the General Association, or in the ultimate upon the Baptist denomination, a benefit merely incidental and in aid of propagation of the denomination's organic life—and we do so interpret it,—not only preserves the life of the amendment but brings it into harmony with its intended purpose as reflected in the interpretive and declaratory resolution of the Board of Trustees of the old corporation who were also the re-incorporators. This interpretation finds further support in an inherent reason: An unincorporated religious association is not a legal entity (Lilly v. Tobbein, 103 Mo. 477, 486, 15 S. W 618); it has no capacity to acquire or hold title, legal or equitable, to property. [Tucker v. Diocese of West Missouri (Mo.), 264 S. W. 897.] In this connection the only right, interest and powers conferred by the charter are conferred upon the Missouri Baptist Gen-

eral Association *eo nomine*, the exercise of the powers being limited to the duration of annual session, known to be brief. The charter does not even require that the college trustees shall be selected from among this membership; the only requirement in that regard being—the same as in the original—that they shall be "in full fellowship with some Missionary Baptist Church of the State." This, however, is not intended to imply that appellant's position would have been strengthened had said requirement been different. An evident result is that the association could function and its members act in its behalf or in behalf of the churches from which they were delegated or for the denomination during only the period of a particular annual session. This, because at the end of the session the association's life expired, and therewith all power of that body and its constituent members was at an end; thereafter and within a twelve-month another and distinct Missouri Baptist General Association came phoenixlike into existence, organized, functioned and expired; and so on from year to year—ephemeral bodies, successive but not continuous.

It is not to be gainsaid that corporations organized for *profit* may act as agents, but we think it may correctly be said that Hardin College, organized as it was, did not so represent the nonlegal body, the General Association, a body dependent wholly upon voluntary contributions, whose purpose and functions were, at least insofar as they related to Hardin College, the promotion, extension and dissemination of the Baptist principles and faith through the co-operation of the various Baptist congregations. The trust specified in the charter and relied upon by the appellant was the privilege vouchsafed the General Association to further the organic and co-operative life of the Baptist denomination, a spiritual objective, through the selection of the college trustees from that denomination. Under the implications of the charter the corporation was concerned but incidentally with such organic life and its objectives, and in nowise with denominational temporalities as distinguished from organic purposes and was not committed to secular aid in any form. On the other hand, neither the denomination nor the association was put under any obligation to the corporation save the association's obligation to select trustees, in reality a mere privilege vouchsafed.

We perceive no element of agency in the case, for reasons already stated and others. There are no specific facts pleaded having any tendency to show or to imply that the money was borrowed and the note executed for on or behalf of the association or its members. The implications of the petition are that the money was used by Hardin College for the purposes of that institution and in its affairs. It does not appear that in the transaction in question the money was sought by the corporation for the General Association

or its members, or by it or them, on behalf of the association, on its or their credit; or that appellant relied upon the credit of it or them. The reason for the lack of allegation that appellant did so rely is patent. This is not to imply that reliance is determinative here, yet it is an essential element of the ratification relied upon and pleaded as the alternative of authorization and as furnishing a basis of agency. Had reliance been alleged it would have been incredible when considered with the other circumstances shown. A transaction of such magnitude outside the large commercial centers is unusual if not indeed rare. It was no small undertaking for the appellant, well and commonly known to have been the leading institution of its kind in the State. With its long and extensive experience in acquiring a large accumulation of loans placed here and there throughout the State, and perhaps beyond, it will be presumed to have known and to have followed the usual and correct business practice in this instance. Thereby it learned who the actual borrower was, acquainted itself with the quantity, kind and stability of the security it was taking and is presumed to have accomplished the immediate fixity of the obligations of the borrower and obligations of all others arising out of the transaction; in other words, the appellant will be presumed to have seen to it that all obligors were "named in the bond." The college was the sole maker of the note; it mortgaged its own valuable properties, its all, to refinance its own debt and advance its own interests; the association was without assets or hope thereof. The inference is unavoidable that appellant placed its sole reliance upon the credit and property of the corporation and that neither the appellant nor the corporation had in contemplation any liability of others incident to the transaction. It is likewise a fair inference that the respondents were of the same mind, for there is no showing or implication to the contrary.

Under the weight of authoritative decisions Hardin College is classifiable as a charitable educational corporation. The distinctive features of a charitable corporation are that it has no capital stock and no provisions for dividends or profits, and it derives its funds mainly from public and private charity and holds them for its charitable objects, such for example as education, for indefinite and uncertain beneficiaries. [Buchanan v. Kennard, 234 Mo. 117, 136 S. W. 415; 5 R. C. L. 331; Zollmann on Law of Charities, sec. 474; Lightfoot v. Poindexter (Tex. Civ. App.), 199 S. W. 1152, numerous cases collated at page 1167.] The directors of the college are not, in legal contemplation, in any sense or to any extent representatives of the General Association or its members who may have participated in the selection of the college corporation's directors. The directors are the corporation itself as successors of the original incorporators who under the statute (Sec. 10265, R. S. 1919) themselves were incorporated under the name of Hardin College.

The only beneficiaries are such acceptable girls and young women as may avail themselves of the educational advantages the college provides.

From the considerations foregoing we are of the opinion that the interest, powers and privileges conferred by the amended charter upon the General Association were incidental, not substantial, and the exercise thereof as alleged obligated the respondents in nowise to the appellant, irrespective of the matter of control. It is plain that the corporation had no authority to carry on and did not carry on any other business than maintaining its college as an educational institution, and that the borrowing of the money in question and the execution of the note in suit was the business of the corporation alone in which the respondents had no substantial interest and took no part either by previous authorization or subsequent ratification of the acts of the corporation or its agents pertaining to those matters. [State ex rel. Morris v. Board of Trustees of Westminster College, 175 Mo. 52, 74 S. W. 990; State ex rel. v. Board of Trust of Vanderbilt University, supra; Lightfoot v. Poindexter, supra, l. c. 1167; 11 C. J. 981.]

In the Lightfoot case, supra, l. c. 1166, it was held that a corporation is not organized and conducted for two purposes, religious and educational, contrary to the law, its charter plainly stating it was organized for educational purposes, though providing it should be under control of a specified religious denomination.

In the Westminster College case our court, in disposing of a question of denominational control, at page 57 said: "The purpose of our law, as to religious corporations, is to leave the subject of religion free from legal restraint or legal assistance, to leave the various churches to pursue their own way unaided and unrestricted by law, no one favored and no one discriminated against. If we should say that colleges may be incorporated by men who have no religious views, but not by men who entertain such views, we discriminate against religious people in a matter most important to the welfare of the State. The argument is that, if the religious society has the selection of the teachers . . . it is enabled to propagate its religious tenets in the youth who come within its influence. But that is an incident of which the law takes no account; it does not charter the corporation to teach religion, but to educate in literature, arts and sciences, and if while a youth is receiving such education he is brought under the influence of a particular religion, the law has no concern with that incident."

In the considerations above it has been our endeavor to go to the roots of the case and to determine and apply the principles of law which in our estimation may properly govern the disposition of the controversy, considering it by and large owing to the numerous and important interests affected. Having done so we think it meet that

we touch, though very briefly, upon the specific points set up and relied upon, and some of the authorities cited in support, in the counsel's brief and argument, although we have had the same in mind all the while.

Assuming that upon the issues joined by the petition and the demurrer the respondents and associated members of the Missouri Baptist General Association brought about the charter amendment and the placement of control directly in themselves, and that they authorized and directed the college as their agent to borrow the money and execute the note in suit on behalf of the association, the appellant contends the result was that the corporation became and was the agent of the respondents, as disclosed principals, and appellant as such agent signed the note for their use and benefit. [Some of the cited authorities are Murphy v. Holliway, 16 S. W. (2d) 107; Bushong v. Taylor, 82 Mo. 660; Ferris v. Thaw, 5 Mo. App. 279; Riffe v. Proctor, 99 Mo. App. 601; Clark v. O'Rourke, 111 Mich. 108, 69 N. W. 147; Thompson v. Garrison, 22 Kan. 765; Lewis v. Tilton, 64 Iowa, 220, 19 N. W. 911; Burton v. Furniture Co., 10 Tex. Civ. App. 270, 31 S. W. 91.] The respondents cite all the cases contained in the list above and others, among the latter, Kemp v. New Mexico Annual Conference of M. E. Church, South (N. M.), 184 Pac. 484. In respect of the cited cases it will suffice to say that they announce and apply a general and well-established rule of law which, in the view we take of the case at bar and have announced in the body of this opinion, has no application to the record before us as the bare statement of this rule will disclose. The rule as deduced from the cases from the country over is expressed in Ruling Case Law (Vol. 23, p. 432), as follows: "Members of an unincorporated church organization, who are actually instrumental in incurring liabilities for it, or who either authorize or ratify its transaction or those made in its name, are personally liable therefor, while those who in no way participate in such transactions are exempt from liability." However, the Kemp case, supra, supports the view announced in the body of this opinion. In that case recovery was sought on the theory that the individuals against whom a recovery was sought were members of the Annual Conference which authorized the formation of a college corporation, and having conducted the negotiations with the citizens of its location for the establishment of the college they, the corporation so formed, were the agents of the Annual Conference. The New Mexico Supreme Court held that the individuals who attended the conference and approved the action taken were not liable for such debts incurred by the corporation.

So, on the whole, we conclude that the action of the trial court in sustaining the demurrer was proper and we affirm the judgment. All concur.