See also 280 S.W.3d 678 and 170 S.W.3d 437.

The EXECUTIVE BOARD OF The MISSOURI BAPTIST CONVENTION, A Missouri Non–Profit Corporation, et al., Respondent,

v.

MISSOURI BAPTIST FOUNDATION, Appellant.

No. WD 74051.

Missouri Court of Appeals, Western District.

Sept. 18, 2012.

Laurence Tucker, Kansas City, MO, Thomas Weaver, St. Louis, MO, Jeffery McPherson, Clayton, MO, for Appellant.

Michael Whitehead, James Freeman, III, Kansas City, MO, Glen Masters, North Kansas City, MO, Charles Hatfield, Jefferson City, MO, Michael Blanton, Leawook, KS, Jim Shoemake, St. Louis, MO, Clyde Farris, Jr., Clayton, MO, for Respondents.

Before: JAMES EDWARD WELSH, C.J., THOMAS H. NEWTON, J., OWENS L. HULL, Sp. J.

THOMAS H. NEWTON, Judge.

The Missouri Baptist Foundation (the Foundation) appeals the trial court's entry of partial summary judgment in favor of the Executive Board (the Board) of the Missouri Baptist Convention (the Convention). The trial court granted partial summary judgment to the Board on Count VII of its petition alleging that amendments the Foundation made to its governing doc-

uments were void because they violated a provision requiring the Board's and the Convention's approval of amendments. We dismiss because the partial summary judgment is ineligible for interlocutory appeal under Rule 74.01(b).

## Factual and Procedural Background

"The Convention is an unincorporated association of messengers from affiliated Southern Baptist churches in the State of Missouri. The Convention acts by and through its Executive Board." *Exec. Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr.*, 280 S.W.3d 678, 684 (Mo.App. W.D.2009). By its 1994 charter,[1] the Foundation was incorporated as a *pro forma* decree corporation under Chapter 352 to support the mission of the Missouri Baptists by "developing, managing and distributing financial resources … as the trust services agency of the Missouri Baptist Convention." The charter gave the Foundation the authority to receive charitable gifts and property, but not to encumber held property, or to distribute undesignated funds without prior Board approval. The Foundation's charter established a twelve person Board of Trustees and the Trustees were to be "nominated and elected in accordance with the procedures and practices of the Nominating Committee of the Missouri Baptist Convention."

In the primary provision at issue here, the Foundation's charter gave the Foundation Trustees authority to amend the charter "in any manner consistent with the purposes of the Foundation" through a specific procedure which required it to submit "any such amendment to the Executive Board of the Missouri Baptist Convention for its recommendation of approval to the Missouri Baptist Convention" and to receive approval from the Convention prior to submission to the circuit court,[2] (hereinafter "consent provision"). The consent provision specifically states that the charter may be amended:

in any manner consistent with the purposes of the Foundation as described in Article IV(A) herein, upon receiving the vote of a majority of the Trustees in office, by submitting any such amendment to the Executive Board of the Missouri Baptist Convention for its recommendation of approval to the Missouri Baptist Convention and, upon receiving the approval of the Missouri Baptist Convention of such amendment, by the President, the Secretary and the Treasurer of the Foundation submitting a petition to the Circuit Court of Cole County, Missouri, praying for a pro forma decree thereon.

In 2002, the Board and certain named Convention members filed suit against the Foundation and other entities seeking declaratory and injunctive relief.[3] Counts

---

1. The Foundation was originally incorporated in 1946. We address only the 1994 Charter and subsequent amendments.

2. Under section 352.070, a chapter 352 pro forma corporation is required to obtain circuit court approval to amend its charter. A Chapter 352 corporation:

   may amend its charter in any matter germane to such charter, by submitting the proposed amendment to the circuit court, and in other respects proceeding as re-

quired in section 352.060 for the original articles of agreement.
§ 352.070.

3. The other entities are not parties to this appeal. The Board's suit has been extensively litigated and addressed in two previous appeals to this court. *See Exec. Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr.*, 280 S.W.3d 678 (Mo.App. W.D. 2009); *Exec. Bd. of Mo. Baptist Convention v. Carnahan*, 170 S.W.3d 437 (Mo.App. W.D. 2005).

VII, VIII, and IX of the fifteen-count petition were asserted against the Foundation.[4] Count VII sought a declaratory judgment, Count VIII sought "rescission and restitution," and Count IX sought a declaration that section 352.070 is unconstitutional.

Specifically, in Count VII, the Board alleged that in violation of the consent provision within the Foundation's charter, on October 1, 2001, the Foundation filed a petition in circuit court seeking court approval of Articles of Acceptance changing the Foundation's status from a Chapter 352 Religious and Charitable Association to a Chapter 355 Nonprofit Corporation, without Board or Convention approval (hereinafter "First 2001 Amendment"). It contended the filing was fraudulently intended to induce the court to approve it by failing to advise the court that approval was required and had not been obtained. The court issued the requested decree, the Foundation filed Articles with the Secretary of State, and the Secretary of State accepted the Foundation as a Missouri Nonprofit Corporation on October 9, 2001.[5] The First 2001 Amendment retained the substantive rights of the Convention expressed in the 1994 Charter, including the consent provision.[6]

On the following day, October 10, 2001, the Foundation filed amended articles with the Secretary of State (hereinafter "Second 2001 Amendment"). The Board alleged the Second 2001 Amendment "purported to eliminate ... exclusive rights of the Convention" and was filed fraudulently. Although the filing form required the Foundation to indicate if approval was required by "some person ... pursuant to section 355.606," the Foundation did not so indicate. The Second 2001 Amendment did not carry forward the consent provision in the charter. The Board's petition further alleged that the Second 2001 Amendment eliminated the Convention's rights, *inter alia:* to control the appointment and removal of the Foundation's Board of Trustees; to direct the disposition of the Foundation's property in the event of the Foundation's dissolution and to manage certain funds; and to approve the encumbrance of any of the Foundation's property. The Second Amendment further gave the Trustees authority to distribute undesignated funds and provided that the Foundation's Board of Trustees would be "self-perpetuating."

In Count VII, the Board claimed, *inter alia,* that the Second 2001 Amendment was "unlawful, ineffective, and void ab initio" because it violated the Foundation's charter, provisions of the Articles of Acceptance filed as the First 2001 Amendment, as well as section 355.606,[7] section

---

4. Count VII was also asserted against the Secretary of State; the docket entries indicate the Secretary of State was dismissed as a party.

5. Once a pro forma decree corporation is accepted as a nonprofit corporation under Chapter 355, it ceases to be governed by Chapter 352 and is no longer under court supervision.

6. The Articles of Acceptance still purported to require the Foundation to submit amendments to the circuit court for approval, though such a requirement refers to a Chapter 352 pro forma corporation, not a Chapter 355 Nonprofit.

7. Section 355.606 specifically provides that:

> articles may require an amendment to the articles or bylaws to be approved in writing by a specified person or persons other than the board. Such an article provision may only be amended with the approval in writing of such person or persons.

Thus, section 355.606 specifically provides for a nonprofit corporation's articles to have a consent provision.

355.586,[8] and common law. Count VII additionally asserted a breach of contract claim, alleging that the charter constituted a contract between the Foundation and the Convention that was violated by both amendments. In the alternative, the Board contended the Convention was a third-party contract beneficiary of the charter and both amendments were breaches of the contract. Count VII additionally alleged that the Foundation enacted "Golden Parachute" contracts to compensate its management if Convention-elected trustees regained control of the Foundation, and contended the Foundation's bad faith conduct justified an award of attorney fees.

In Count VIII of its petition, the Board pleaded in the alternative that the Convention was entitled to rescission and restitution. It argued that if the Convention was not entitled to enforce its rights under the charter, the Convention was entitled to rescission of the charter, restitution of certain property, and rescission of a lease agreement executed in 1998. In Count IX, the Board sought a declaration that sections 355.020, 352.070, and 352.060, are unconstitutional because they permit an entity like the Foundation to change its status from Chapter 352 to Chapter 355 without requiring notice to parties whose rights and privileges are affected.

The Board subsequently moved for partial summary judgment. The trial court entered partial summary judgment in favor of the Board on Count VII and found pursuant to Rule 74.01(b) that there was no just cause for delay. The trial court

found that despite the complexity of the case, a "simple truth" was apparent:

> [T]he unavoidable and uncontested fact is that—prior to the Foundation's actions in October of 2001—the Convention had an absolute and unqualified right to approve or reject all amendments to the Foundation's Charter (and, later, the Foundation's Articles of Incorporation) before those amendments could take effect. In October of 2001, the Foundation deliberately, repeatedly, and surreptitiously ignored the Convention's right solely for the purpose of circumventing and, ultimately, eliminating it.

As remedies, the trial court declared that the First 2001 Amendment was knowingly and purposefully made in violation of the Foundation's 1994 Charter; that the Second 2001 Amendment was knowingly and purposefully made in violation of the Foundation's October 9, 2001 Articles; and that both amendments were voidable and declared void. It ordered the Foundation to file notice with the circuit court and the Secretary of State that the amendments were void. It further ordered any Director or Trustee who took office as a result of the amendments to forfeit his or her office, that any vacancies were governed by the 1994 Charter, and that the Foundation was required to pay the "the Convention's costs and attorney's fees in prosecuting the claims that resulted in this Judgment and such additional costs and fees as the Convention may incur in defending this Judgment or as a result of any additional proceedings called for in this Judgment, with the amount of such fees to be determined in additional pro-

8. Section 355.586 provides that:
   An amendment to articles of incorporation does not affect a cause of action existing against or in favor of the corporation, a proceeding to which the corporation is a party, any requirement or limitation imposed upon the corporation or any property held by it by virtue of any trust upon which such property is held by the corporation or the existing rights of persons other than members of the corporation.

ceedings" before the Court. It further held that the Foundation was barred from making any payments on alleged "Golden Parachutes" agreements between the Foundation and its management employees until further hearings were held. As noted, the trial court certified its partial summary judgment as appealable under Rule 74.01(b). The Foundation appeals, raising five points.

## Legal Analysis

In its first point and jurisdictional statement, the Foundation contends the trial court erred in entering partial summary judgment and declaring there was no just cause for delay and the order was immediately appealable because the order left matters to be determined and did not "resolve all issues" between the Foundation and the Board. It thus argues we do not have authority to hear the appeal because the judgment was not final. In its second point, the Foundation argues the trial court erred in entering partial summary judgment because there were disputed material facts. In its third point, the Foundation contends the trial court erred in entering summary judgment because the Board failed to negate the Foundation's affirmative defenses. In its fourth point, the Foundation argues the trial court erred in awarding attorney's fees. In its fifth point, the Foundation contends the

trial court erred in granting partial summary judgment because the Board did not have standing to sue the Foundation. We address the dispositive issue: the Foundation's contention that the trial court erred in entering partial summary judgment and declaring that the order was appealable. Because the Foundation's first point requires dismissal, we do not address its other points.

■■■ The right to appeal is statutory. *Comm. for Educ. Equality v. State*, 878 S.W.2d 446, 450 (Mo. banc 1994). Under section 512.020, if a final judgment has not been entered, we may not entertain the appeal. *Id.* A final judgment is a judgment that "resolves all issues in a case, leaving nothing for future determination." *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997). However, Rule 74.01(b) [9] permits an appeal from a judgment involving multiple claims or multiple parties that resolves "as to one or more but fewer than all of the claims or parties only upon an express determination" by the trial court "that there is no just reason for delay." [10] The purpose of the rule is to promote "judicial economy by permitting interlocutory appeals in cases involving multiple claims or parties." *Buemi v. Kerckhoff*, 359 S.W.3d 16, 20 (Mo. banc 2011). However, the trial court must have reached a final judgment on a minimum of at least

---

9. Rule 74.01(b) provides:

   **Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the

parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

10. Rule 74.01(b) gives the trial court discretion in acting as a "dispatcher" to declare its judgment final and find no just cause for delay. *Comm. for Educ. Equality v. State*, 878 S.W.2d 446, 453 (Mo. banc 1994). Consequently, we review its decision under Rule 74.01(b) for abuse of discretion. *Id.*

one claim before it may designate the partial judgment as appealable. *Comm. for Educ. Equality,* 878 S.W.2d at 450. The rule requires the interlocutory claims to be fully resolved and distinct in order to avoid appellate decisions on issues that later become moot, and to avoid redundant appellate review of claims containing the same factual and legal issues. *Id.* at 451.

■ A claim may not be certified pursuant to Rule 74.01(b) if there are legal issues remaining as to the claim or if it "disposes of only one of several remedies and leaves other remedies relating to the same legal rights open for future adjudication." *Id.* at 450–51. The Missouri Supreme Court has determined that a judgment is final as to particular claims when "the order disposes of a distinct 'judicial unit.'" *Gibson,* 952 S.W.2d at 244. A judicial unit for the purposes of an appeal means: "the final judgment on a claim, and not a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of the claim." *Id.* (internal quotation marks and citation omitted). In *Gibson,* the court determined that because remaining counts of the petition arose "from the same set of facts, and the same transactions and occurrences, as the counts supposedly appealed," the trial court had not resolved a

"single, distinct judicial unit," and the judgment could not be appealed pursuant to Rule 74.01(b). *Id.*

■ Here, the trial court's partial summary judgment is not appealable. First, the judgment did not fully resolve the remedies or the legal issues within Count VII. The trial court explicitly ordered "additional proceedings relating to two other remedies" under Count VII, further stating that its judgment as to Count VII was "partial" and that "two aspects of [its] remedy will require further proceedings." The two remaining proceedings the court contemplated were to determine attorney fees,[11] including those incurred for any additional proceedings, and to determine the issues surrounding the "Golden Parachutes" alleged in Count VII.[12] The trial court then "order[ed] further proceedings on the remaining, unresolved elements of relief requested in Count VII." In its conclusion, although the trial court stated that its judgment was final as to Count VII, "and no longer subject to revision by this Court," it then qualified its statement by declaring "except for the two aspects of the Court's remedy regarding which the Court has ordered additional proceedings." We cannot conclude that the trial court's partial summary judgment disposed of the remedies sought in Count VII.

11. While the Board argues that we "routinely view" judgments as final in which the amount of attorney fees is pending, the parties briefing illustrates why this argument is not viable here. In the instant case, the legal basis for an attorney fees award requires a finding of intentional misconduct by the Foundation and both parties challenge whether such a showing was made; this necessarily requires adjudication of the factual and legal issues remaining between the parties.

12. The Board argues the Convention's claim as to the "Golden Parachutes" was subsequently dismissed in March 2012. The Foundation argues that the Convention fails to cite anything within the record. CaseNet shows a

docket entry of "Plaintiff's Voluntary Dismissal of Claim Regarding Golden Parachutes Against Defendant Missouri Baptist Foundation Without Prejudice" on March 20, 2012. The "Golden Parachutes" allegation was made in support of the Board's allegations in Count VII of fraudulent and wrongful conduct. Given that the Board may reassert this claim, we fail to find that the voluntary dismissal disposed of the claim for the purposes of our Rule 74.01(b) analysis. We also note that this issue highlights the inefficiencies in certifying a partial summary judgment for appellate review where the remedies of a claim have not been fully adjudicated.

Further, the partial summary judgment did not fully dispose of the legal issues the Board raised within Count VII. As noted, Count VII, in addition to Count VIII, specifically asserted contract claims in reference to the charter. In its judgment, the trial court found the amendments "violated the Convention's rights under the Charter and the original Articles" and the Convention was entitled to "sue to enforce those rights and seek a remedy for those violations" but sought to distinguish this ruling from the contractual claims. The judgment states that the origin of the Convention's rights "are, in some sense, contractual and the Convention may be entitled to pursue a contractual theory of relief and obtain contractual remedies in addition to the relief granted ..." but found "[i]t has not been necessary ... to evaluate Count VII under a contract analysis." The court noted that "the Convention ... also has pending Counts based upon contractual claims and seeking contractual remedies. Other than the facts forming the uncontested basis for Judgment and the Court's legal conclusions ... nothing in this Judgment should be taken as either favoring or prohibiting such Counts or remedies." However, whether the charter gave the Board a contractual right was a central legal issue in both Counts VII and Counts VIII; the court's partial summary judgment did not reach these issues, yet asserted that contractual remedies were still pending based on this same issue.

■■■ Second, we cannot find that Count VII was a distinct judicial unit because Counts VIII and IX—in which the Board sought rescission of the charter and specific lease contracts, restitution, and to have certain statutes declared unconstitutional—arose from the same set of facts, and the same transactions and occurrences, as Count VII. Specifically, the issues in Counts VIII and IX also arose

from the Foundation's actions in the First and Second 2001 Amendments. As reiterated in *Gibson:*

> An order dismissing some of several alternative counts, each stating only one legal theory to recover damages for the same wrong, is not considered an appealable judgment while the other counts remain pending because the counts are concerned with a single fact situation. It is "differing," "separate," "distinct" transactions or occurrences that permit a separately appealable judgment, not differing legal theories or issues presented for recovery on the same claim.

952 S.W.2d at 244 (internal quotation marks and citations omitted). Thus, under our precedents, even if we found that the partial summary judgment were final as to Count VII, Count VII could not be determined to be a "distinct judicial unit," as the remaining counts against the Foundation concern the same overlapping facts and transactions.

Finally, in *Bakewell v. Breitenstein,* we recently dismissed an appeal certified under Rule 74.01(b) where the trial court's order similarly provided that the judgment did not "fully and completely resolve all issues currently pending" and "issues pertaining to the payment of costs and attorney fees [were] to be taken at the ultimate trial of the case as a whole, or at such further hearing of the Court in which all remaining claims are fully and finally addressed." 363 S.W.3d 353, 357 (Mo.App. W.D.2012) (internal quotation marks omitted). We determined that absent the trial court's language we would have deemed the partial summary judgment final, but because the trial court's language indicated it believed not all issues were resolved, we could not conclude that it was a final judgment or that it disposed of a distinct judicial unit. *Id.*

### Conclusion

For the foregoing reasons, we dismiss the Foundation's appeal because the partial summary judgment is ineligible for interlocutory appeal under Rule 74.01(b) and remand to the trial court for further proceedings.

WELSH, C.J., and HULL, Sp. J. concur.

