

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| THE EXECUTIVE BOARD OF THE MISSOURI BAPTIST CONVENTION, et al., | ) ) ) ) | |
| Respondents, | ) ) | |
| v. | ) ) | **WD78034** |
| MISSOURI BAPTIST FOUNDATION, | ) ) | **FILED: May 24, 2016** |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cole County**
**The Honorable Frank Conley, Judge**

**Before Division Four: Alok Ahuja, C.J., Anthony Rex Gabbert, J., and**
**S. Margene Burnett, Sp. J.**

The Missouri Baptist Foundation appeals the trial court's entry of judgment in favor of

the Executive Board of the Missouri Baptist Convention.[1] The judgment declared that

amendments made by the Foundation to its organizational documents in 2001 were void; those

amendments had the effect of eliminating various rights of the Convention to oversee and

influence the Foundation's actions. The court found the amendments to be void because they

---

[1]        We refer to the plaintiff-respondent as "the Convention" throughout the remainder of this opinion. The petition includes additional plaintiffs, but their identity and involvement in the litigation are not relevant to the issues presented in this appeal. In *Executive Board of Missouri Baptist Convention v. Carnahan*, 170 S.W.3d 437 (Mo. App. W.D. 2005), we held that "[t]he Convention is an unincorporated religious association and, as such, is not a legally cognizable entity," and that it "lack[ed] the legal capacity to sue or be sued in the name of the association." *Id.* at 445. We also held, however, that the Executive Board (which *is* incorporated) could represent the Convention pursuant to Rule 52.10, *id.* at 451, although we concluded that "[t]he Executive Board as an incorporated entity separate and independent of the Convention suffered no injury." *Id.* at 452.

were adopted without the Convention's prior review and approval, as required by the Foundation's governing documents.

On appeal, the Foundation argues that the circuit court's judgment is not an appealable final judgment and that this appeal should accordingly be dismissed. It also argues that the Convention lacks standing to sue to challenge the amendments. On the merits, the Foundation contends that summary judgment was improperly granted because material facts remained in dispute and because the Convention's summary judgment motion failed to set forth undisputed facts to negate certain of the Foundation's affirmative defenses. The Foundation also argues that the circuit court's award of attorney's fees was erroneous.

The judgment is affirmed. We conclude that the circuit court's judgment is a partial final judgment which is immediately appealable by virtue of Supreme Court Rule 74.01(b). We also conclude that the Convention has standing to challenge the Foundation's disregard of provisions of its organizational documents which gave the Convention the right to review and approve any amendments. On the merits, we find that the circuit court properly granted summary judgment to the Convention. Finally, we conclude that the Foundation's challenge to the circuit court's attorney's fees award is moot because the Convention has released its claim for attorney's fees in exchange for a payment made by the Foundation's insurer.

## Factual Background

This is the second appeal from the circuit court's grant of summary judgment on the Convention's claims against the Foundation.[2] In the prior appeal, we found that appellate jurisdiction was lacking despite the trial court's certification of its ruling as a partial final

---

[2] The underlying lawsuit has also been the subject of two additional appeals. *See Exec. Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr.*, 280 S.W.3d 678 (Mo. App. W.D. 2009); *Exec. Bd. of Mo. Baptist Convention v. Carnahan*, 170 S.W.3d 437 (Mo. App. W.D. 2005).

judgment under Rule 74.01(b), because the circuit court's judgment did not fully dispose of all issues relating to a distinct "judicial unit." *Exec. Bd. of Mo. Baptist Convention v. Mo. Baptist Found.*, 380 S.W.3d 599, 606 (Mo. App. W.D. 2012). Our prior opinion contained a detailed recitation of the relevant facts, *id.* at 601-04, from which we borrow without further attribution.

"The Convention is an unincorporated association of messengers from affiliated Southern Baptist churches in the State of Missouri. The Convention acts by and through its Executive Board." *Exec. Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr.,* 280 S.W.3d 678, 684 (Mo. App. W.D. 2009). The Foundation was originally incorporated in 1946. In its 1994 charter, the Foundation was established as a charitable corporation under Chapter 352 of the Revised Statutes of Missouri, to support the mission of Missouri Baptists by "developing, managing and distributing financial resources . . . as the trust services agency of the Missouri Baptist Convention."

Consistent with its declaration that the Foundation was to serve as "the trust services agency of the Missouri Baptist Convention," the 1994 charter recognized the close relationship between the Foundation and the Convention by giving the Convention and its Executive Board numerous specific rights. The charter established a twelve-member Board of Trustees, and specified that Trustees were to be "nominated and elected in accordance with the procedures and practices of the Nominating Committee of the Missouri Baptist Convention." The 1994 charter required the Foundation to make quarterly reports to the Executive Board. The charter gave the Foundation the authority to receive charitable gifts and property, but did not authorize the Foundation to encumber property, or to distribute undesignated funds, without prior approval of the Executive Board. The charter also provided that, if the Foundation dissolved, its net assets after payment of liabilities would be distributed to the Executive Board.

In the primary provision at issue here, the Foundation's 1994 charter stated that it could be amended

> in any manner consistent with the purposes of the Foundation as described in Article IV(A) herein, upon receiving the vote of a majority of the Trustees in office, by submitting any such amendment to the Executive Board of the Missouri Baptist Convention for its recommendation of approval to the Missouri Baptist Convention and, upon receiving the approval of the Missouri Baptist Convention of such amendment, by the President, the Secretary and the Treasurer of the Foundation submitting a petition to the Circuit Court of Cole County, Missouri, praying for a pro forma decree thereon.

We refer to this provision as the "consent provision."

The Convention originally filed this lawsuit in 2002. The Convention's current operative pleading is its Fifth Amended Petition, filed in September 2006. The Fifth Amended Petition asserted claims against five defendants: the Foundation; the Baptist Home; Missouri Baptist University; Windermere Baptist Conference Center; and Word and Way, a newspaper.[3] The petition began by explaining:

> This case involves the fundamental right of a religious denomination to maintain authority over its subordinate ministry corporations by reserving the rights to elect trustees and to approve charter amendments. The Plaintiffs seek declaratory and injunctive relief under Mo. Rev. Stat. § 478.070 to enforce these rights. The Plaintiffs seek a declaration that the dishonest and deceptive breakaway of five subsidiary corporations, with ministry assets totaling about a quarter of a billion dollars, violated contract promises, statutory rights and other duties owed to the Missouri Baptist Convention (the "Convention").

---

[3]  The circuit court granted summary judgment to defendant Windermere in March 2008, and this Court affirmed that judgment in *Executive Board of Missouri Baptist Convention v. Windermere Baptist Conference Center*, 280 S.W.3d 678 (Mo. App. W.D. 2009). The Convention voluntarily dismissed its claims against Word and Way without prejudice in April 2010. The Fifth Amended Petition also named the Missouri Secretary of State as a defendant. As we recognized in the prior appeal involving the Convention's claims against the Foundation, "the docket entries indicate the Secretary of State was dismissed as a party." 380 S.W.3d at 602 n.4. Therefore, at the present time the remaining defendants are the Foundation, Missouri Baptist University, and the Baptist Home.

4

The Convention asserted claims against the Foundation in Counts VII, VIII, and IX of the Fifth Amended Petition.[4] The Convention's claims against the Foundation challenged amendments made to the Foundation's organizational documents in 2001. The amendments were adopted without approval of the Convention or its Executive Board, and had the effect of eliminating the Convention's and Executive Board's oversight and approval rights under the 1994 charter. Count VII sought a declaratory judgment, Count VIII sought "rescission and restitution," and Count IX sought a declaration that the statutes under which the Foundation obtained *ex parte* circuit court approval of the 2001 amendments were unconstitutional.

The circumstances giving rise to the Convention's claims against the Foundation are as follows. The Foundation filed an *ex parte* petition in the circuit court on October 1, 2001, seeking court approval of Articles of Acceptance changing the Foundation's status from a Religious and Charitable Association under Chapter 352 of the Revised Statutes, to a Chapter 355 Nonprofit Corporation (hereinafter "First 2001 Amendment"). *See* §§ 352.070, 355.020.1(2), RSMo. The Foundation submitted the First 2001 Amendment to the circuit court without prior approval of the Convention or its Executive Board. By converting to a nonprofit corporation under Chapter 355, the Foundation would cease to be governed by Chapter 352, and would no longer be subject to court supervision.

The circuit court issued the requested decree approving the First 2001 Amendment. The Foundation thereafter filed Articles of Acceptance with the Secretary of State, and on October 9, 2001, the Secretary of State accepted the Foundation as a Missouri Nonprofit Corporation subject to Chapter 355. *See* § 355.020.2, RSMo. The First 2001 Amendment retained the

---

[4] The Fifth Amended Petition also asserted claims against the Foundation in Count X (prima facie tort), and Count XVIII (civil conspiracy). The Convention voluntarily dismissed Count X, and Count XVIII was dismissed by the circuit court in an order which is not at issue in this appeal.

5

substantive rights of the Convention expressed in the 1994 Charter, including the consent provision.

On the following day (October 10, 2001), the Foundation filed amended articles of incorporation with the Secretary of State (the "Second 2001 Amendment"). The Second 2001 Amendment eliminated the consent provision, and also eliminated the Convention's and the Executive Board's rights: to control the appointment and removal of the Foundation's Trustees; to receive quarterly reports; to receive the Foundation's net assets in the event of the Foundation's dissolution; and to approve the encumbrance of the Foundation's property and the distribution of undesignated funds. The Second 2001 Amendment provided that the Foundation's Board of Trustees would be "self-perpetuating." Neither the Convention nor its Executive Board were given the opportunity to review or approve of the Second 2001 Amendment prior to its adoption. At its October 2001 annual meeting, the Convention formally disapproved of the Second 2001 Amendment. Although the Convention requested that the Foundation rescind the Second 2001 Amendment, the Foundation refused to do so.

In Count VII, the Convention claimed, *inter alia,* that the 2001 Amendments violated the terms of the Foundation's governing documents, the terms of the statutes governing the Foundation's operations, and the Convention's contractual rights (or its rights as an intended third-party beneficiary) under the 1994 charter. Count VII also alleged that the 2001 Amendments were procured by fraud on the circuit court and on the Secretary of State. Count VII additionally alleged that the Foundation improperly adopted "golden parachute" contracts to compensate its management if Convention-elected Trustees regained control of the Foundation, and contended that the Foundation's bad-faith conduct justified an award of attorney fees.

Count VII sought a declaration, among other things, that the Convention's rights under the 1994 charter, including its rights to consent to charter amendments, were legally enforceable; that the Foundation's actions "purporting to extinguish the Convention's rights" were unlawful; that the 1994 charter remained in effect; that the authorized Trustees of the Foundation were the Trustees elected by the Convention; and that the "golden parachute" agreements were void and unenforceable.

In Count VIII of its petition, the Convention pleaded in the alternative that, if the Convention was not entitled to enforce its rights under the 1994 charter, then the Convention was entitled to rescission of the charter, restitution of certain property, and rescission of a lease agreement executed in 1998. In Count IX, the Board sought a declaration that §§ 352.060, 352.070, and 355.020, RSMo are unconstitutional because they permit an entity like the Foundation to change its status from a Chapter 352 to a Chapter 355 corporation without requiring notice to parties whose rights are affected by the conversion.

The Convention subsequently moved for partial summary judgment. On December 31, 2010, the circuit court (Judge Paul Wilson) entered a 32-page judgment granting the Convention's motion, and certified the judgment as a partial final judgment under Rule 74.01(b) (the "2010 Judgment"). On May 13, 2011, the court (Judge Byron Kinder, to whom the case had been reassigned) modified the 2010 Judgment to stay the court's ruling until appeals had been exhausted, but otherwise adopted the 2010 Judgment, including the Rule 74.01(b) certification (the "2011 Judgment"). Repeating language from the 2010 Judgment, the 2011 Judgment finds that, despite the complexity of the case, a "simple truth" was apparent:

> [T]he unavoidable and uncontested fact is that – prior to the Foundation's actions in October of 2001 – the Convention had an absolute and unqualified right to approve or reject all amendments to the Foundation's Charter (and, later, the Foundation's Articles of Incorporation) before those amendments could take

7

effect. In October of 2001, the Foundation deliberately, repeatedly, and surreptitiously ignored the Convention's right solely for the purpose of circumventing and, ultimately, eliminating it.

The 2010 and 2011 Judgments concluded that the First 2001 Amendment was knowingly and purposefully made in violation of the Foundation's 1994 Charter, and that the Second 2001 Amendment was knowingly and purposefully made in violation of the Foundation's October 9, 2001 Articles. The Judgments voided both Amendments, and ordered the Foundation to file a notice in the record of the 2001 *ex parte* proceeding, and notify the Secretary of State, that the Amendments had been declared void. It further ordered any Director or Trustee who took office as a result of the Amendments to forfeit his or her office, and declared that any vacancies on the Foundation's Board of Trustees would be governed by the 1994 Charter. The Judgments further ordered that the Foundation pay the "the Convention's costs and attorney's fees in prosecuting the claims that resulted in this Judgment and such additional costs and fees as the Convention may incur in defending this Judgment or as a result of any additional proceedings called for in this Judgment, with the amount of such fees to be determined in additional proceedings." The Judgments further held that the Foundation was barred from making any payments on alleged "golden parachute" agreements between the Foundation and its management employees until further hearings were held.

Besides stating that the amount of attorney's fees, and the validity of the "golden parachute" agreements, would be decided in further proceedings, the 2010 and 2011 Judgments also explicitly stated that the Convention's reliance on contractual principles in Count VII, and the claims asserted in Counts VIII and IX, remained unresolved. In footnote 4 of the Judgments, the circuit court observed:

> [T]he Court . . . rejects the Foundation's assertion that the rights asserted (and now vindicated) in Count VII can only be analyzed as "contract" claims. True, the Charter and Articles from which the Convention's rights arise are, in some

8

sense, contractual and the Convention may be entitled to pursue a contractual theory of relief and obtain contractual remedies in addition to the relief granted herein. The Convention has additional counts still to be litigated in which those issues can be explored. In this Judgment, however, the Court grants the Convention declaratory relief (and other related remedies) only as to Count VII and solely on the ground that the Foundation violated its Charter (and articles) and that the Convention has the right to sue to enforce the provisions violated and obtain a fair remedy for the Foundation's actions. It has not been necessary for the Court to evaluate Count VII under a contract analysis, though the Court would have reached the same conclusions and granted the same relief had it done so.

Similarly, footnote 7 of the Judgments stated:

As noted above, the Convention has [sic] also has pending Counts based upon contractual claims and seeking contractual remedies. Other than the facts forming the uncontested basis for this Judgment and the Court's legal conclusions, which will be law of this case until reversed or vacated on appeal, nothing in this Judgment should be taken as either favoring or prohibiting such Counts or such remedies.

The Foundation appealed. This Court dismissed the appeal, finding that the 2011 Judgment was not an appealable partial final judgment, because it did not fully and finally resolve a distinct claim or "judicial unit." 380 S.W.3d 599. We reached the conclusion that appellate jurisdiction was lacking for three reasons. _First_, the 2011 Judgment explicitly stated that further proceedings would be required with respect to two remedial issues under Count VII: the amount of the Convention's recoverable attorney's fees, and the validity of the "golden parachute" agreements the Foundation entered with certain key employees. _Id._ at 605. _Second_, we emphasized the Judgment's statements that contractual claims remained pending, and might entitle the Convention to "obtain contractual remedies in addition to the relief granted." _Id._ at 606. Because the Judgment specifically deferred ruling on attorney's fees, "golden parachute" agreements, and contract theories, we held that "the partial summary judgment did not fully dispose of the legal issues the [Convention] raised within Count VII." _Id._ _Third_, we held that, "even if we found that the partial summary judgment was final as to Count VII," the Judgments could still not be read as resolving a "distinct judicial unit," because Count VII "arose from the

9

same set of facts, and the same transactions and occurrences," as Counts VIII and IX, which the 2011 Judgment did not resolve. *Id.* The case was remanded for further proceedings.

On remand, the circuit court (Judge Frank Conley) issued two rulings on June 6, 2014: a twelve-page order determining the amount of the Convention's recoverable attorney's fees; and an eleven-page document denominated "Final Judgment" (the "2014 Judgment"). After recounting the history of the 2010 and 2011 Judgments, and this Court's dismissal of the appeal, the 2014 Judgment unambiguously states the circuit court's intent to resolve all finality issues, and make the judgment subject to immediate appeal:

> This Court has taken all "further proceedings" contemplated in the [2011] Judgment, and mandated by the Court of Appeals. The case is ready for full and final judgment, and not just partial summary judgment.

The 2014 Judgment states that the circuit court "has complied fully with the requirements of the mandate and opinion of the appellate court, but has not gone beyond what was mandated." Thus, the court stated that it would *not* reconsider issues which had previously been resolved by Judges Wilson and Kinder in the 2010 and 2011 Judgments, since this Court "*did not* direct the trial court to reopen the summary judgment proceedings, to re-litigate any issues, or to reconsider any rulings." Instead, the circuit court read our mandate as directing "that the trial court must state clearly that all factual and legal issues in the judicial unit comprised by Count VII (and perhaps by Counts VIII and IX) are resolved by the judgment, without need for future proceedings to resolve them. The Court is prepared to, and does hereby make such a declaration."

The 2014 Judgment then proceeds one-by-one through the unresolved issues identified by this Court's opinion. The Judgment first notes that, in the separate order issued on the same day, the court had found that the facts warranted an award of attorney's fees, and had determined the amount of the attorney's fees the Convention was entitled to recover. The Judgment then states

10

that, with respect to "golden parachute" agreements, the Convention had dismissed its claims "based on assurances by defense counsel that there had been no such payments." "To avoid confusion," the court entered judgment dismissing the "golden parachute"-related claims with prejudice, and struck a paragraph from the 2011 Judgment which enjoined the Foundation from making payments under any "golden parachute" agreements pending further order. Next, the court struck the language of footnote 4 suggesting that the Convention could seek additional relief on a contract theory, noting that "the deleted sections are now moot, as [the reference to "additional counts to be litigated"] seem[s] to pertain to the attorneys' fees and golden parachutes issues in Count VII, and other claims in Count VIII and IX, all of which are otherwise disposed of herein." The court also altered language in footnote 4 stating that "[i]t has not been necessary for the court *to evaluate Count VII* under a contract analysis," modifying that language to read: "[i]t has not been necessary for the court *to explain its holding regarding Count VII* under a contract analysis." (Emphasis added.) The court explained this emendation by stating that "[i]t seems clear that Judges Wilson and Kinder engaged in an analysis involving contract law principles in reaching a conclusion, but the Amended Judgment does not depend upon 'contract analysis' alone to explain or justify its holding." Finally, the 2014 Judgment states that Counts VIII and IX would be dismissed as moot, since "[b]oth of these were alternative theories which would have been reached only if the Court had ruled against [the Convention] on Count VII."

The Foundation once again appeals.

11

**Discussion**

**I.**

The Foundation raises five Points on appeal. It first contends that this Court once again lacks jurisdiction to hear the appeal, because the 2014 Judgment is not a final judgment resolving all claims against all parties, and was not properly certified for appeal under Rule 74.01(b).

First, we reject out of hand the Foundation's contention that the circuit court believed it was issuing a judgment which resolved all claims against all parties. To support this argument, the Foundation seizes on the language from the 2014 Judgment stating that "[t]he case is ready for full and final judgment, and not just partial summary judgment." According to the Foundation, while the circuit court may have *thought* it was entering a "full and final judgment" resolving the entire litigation, it plainly failed to do so, since the Convention's claims against Missouri Baptist University, and against the Baptist Home, remain unresolved. *See* footnote 3, above.

The Foundation's argument simply ignores the context in which Judge Conley issued the 2014 Judgment. The Judgment states, repeatedly, that it was being issued in response to our 2012 opinion, which dismissed an appeal from the 2011 Judgment because the claims *against the Foundation* had not been fully and finally resolved. This Court's 2012 opinion emphasizes, over and over, that the 2011 Judgment could only be appealed if it had been properly certified as a *partial* final judgment under Rule 74.01(b).[5] The assumption underlying our entire opinion was

---

[5]     Rule 74.01(b) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the

12

that the Convention had *other* claims, against *other* parties, which the 2011 Judgment had not attempted to address. The only plausible reading of the 2014 Judgment is that it was intended to fully and finally resolve only the Convention's claims *against the Foundation*, and thereby satisfy the requirements of Rule 74.01(b) to constitute an appealable – albeit partial – final judgment. The fact that claims remain pending against Missouri Baptist University and the Baptist Home is irrelevant to the question whether the judgment is final and appealable.

The Foundation next argues that the 2014 Judgment fails to contain "an express determination that there is no just reason for delay," and that it therefore fails to meet Rule 74.01(b)'s requirements for a partial final judgment. While the 2014 Judgment does not explicitly refer to Rule 74.01(b), and does not expressly find that there is no just reason for delay, the 2011 Judgment makes the necessary findings. The 2014 Judgment makes clear that it is intended to incorporate by reference the terms of the 2011 Judgment, and merely supplement and modify that earlier judgment to address the finality concerns raised by this Court. The 2014 Judgment was not intended as a stand-alone ruling, separate and apart from the earlier judgment, and it could not be read in that fashion. The 2014 Judgment makes clear at the outset that the court was unwilling to "reopen" the dispositive rulings contained in the 2010 and 2011 Judgment, but that it instead adhered to the earlier rulings (even though it does not restate them). The 2014 Judgment is plainly incomplete, standing on its own: most obviously, it does not within its "four corners" address whether the First and Second 2001 Amendments lawfully modified the Foundation's charter, although that is the essence of the Convention's claims against the Foundation. Instead, it is apparent that the 2014 Judgment presupposes, and incorporates, the holdings of the 2011 Judgment that the Foundation's attempted amendments of

order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

13

its governing documents were invalid.  In addition, the 2014 Judgment makes very specific revisions to the 2011 Judgment, deleting or modifying particular sentences or phrases. Obviously, the exercise of modifying particular passages of the earlier judgment reflects the circuit court's intent in 2014 to reaffirm the earlier judgment as modified, even though the court's 2014 Judgment may not have set forth all of the earlier judgment verbatim.

"It is the content, substance, and effect of the order that determines finality and appealability." *ABB, Inc. v. Securitas Sec. Servs. USA, Inc.*, 390 S.W.3d 196, 200 (Mo. App. W.D. 2012).  "[I]f the combined effect of several orders entered in a case, including an order denominated 'final judgment,' is to dispose of all issues as to all parties, leaving nothing for future determination, then the *collective* orders combine to form the 'final judgment' from which an appeal can be taken."  *RLI Ins. Co. v. S. Union Co.*, 341 S.W.3d 821, 828 (Mo. App. W.D. 2011) (emphasis in original); *accord*, *DeGennaro v. Alosi*, 389 S.W.3d 269, 274 (Mo. App. W.D. 2013).  "We will not construe an order denominated 'final judgment' as having the *per se* effect of vacating the trial court's previously entered dispositive orders unless the final judgment expresses the trial court's intent to do so, or unless the peculiar circumstances of the case permit no other reasonable conclusion." *Id.*  Although the 2014 Judgment may not explicitly state that the 2011 Judgment was "incorporated by reference," the multiple references, and specific modifications, to the earlier judgment are sufficient to demonstrate the circuit court's intent to incorporate the earlier judgment. *See DeGennaro*, 389 S.W.3d at 274 (recital in later judgment that circuit court had approved a stipulated parenting plan in an earlier order "was sufficient to incorporate the prior order into the judgment").  In this case, the 2011 and 2014 Judgments combine to form the partial final judgment which is subject to review in this appeal.  Because the

2011 Judgment included the findings required by Rule 74.01(b), and that earlier judgment was incorporated into the 2014 Judgment, the Rule's requirements were satisfied.

The Foundation also argues that this Court does not have authority to hear the appeal because there is not a final judgment as to a distinct judicial unit. Specifically, the Foundation argues that the circuit court failed to address allegations in Count VII that the Convention and the Foundation had entered into a "contractual relationship" (or that the 1994 charter was a contract of which the Convention was a third-party beneficiary), and that the Foundation's First and Second 2001 Amendments breached its contractual obligations.[6]

As noted above, footnote 4 of the 2011 Judgment acknowledged that "the Convention may be entitled to pursue a contractual theory of relief and obtain contractual remedies in addition to the relief granted herein." Our 2012 opinion found that the 2011 Judgment was not final based (in part) on the judgment's explicit recognition that the Convention might be able to obtain additional relief on an unresolved contract-law theory. 380 S.W.3d at 606. The 2014 Judgment resolves any contract issue, however, by deleting the statement that the Convention might be entitled to pursue additional relief on a contract theory. This deletion was more than cosmetic. The 2014 Judgment declares that "all factual and legal issues in the judicial unit comprised by Count VII . . . are resolved by the judgment, without need for future proceedings to resolve them." Moreover, the 2014 Judgment retains a provision of the 2011 Judgment, which stated that "the Court denies all relief requested with respect to Count VII not granted herein or made the subject of further proceedings." Therefore, by deleting the statement in the 2011 Judgment that further proceedings were contemplated on the Convention's contract-law claims,

---

[6] The Foundation also points to other paragraphs in Count VII which were purportedly unresolved by the Circuit Court, which could be read to assert claims based on fraud or violation of particular statutes. Whatever the theory, as explained below the 2014 Judgment plainly forecloses further proceedings on Count VII of the Convention's petition.

15

the 2014 Judgment makes clear that *no* further proceedings will occur with respect to *any* theory alleged in Count VII of the Convention's Fifth Amended Petition.[7]

Although the circuit court did not conduct any further proceedings, or award the Convention any further relief, with respect to any contract-law claim, it plainly ruled on that claim fully and finally.[8] Whether the court's disposition of the contract-law claim was right or wrong, the *correctness* of the trial court's disposition does not affect our appellate jurisdiction; indeed, if anyone was aggrieved by that ruling, it would be *the Convention* (to the extent it believed it was entitled to additional or different relief on a contract-law theory).

Point I is denied.

## II.

The Foundation's second Point contends that the circuit court erred in entering judgment for the Convention because the Convention lacks standing to sue.

Adopting language from the 2010 Judgment, the 2011 Judgment makes the following observation with respect to the Foundation's standing arguments:

---

[7] We note that the 2014 Judgment does not explicitly modify or delete footnote 7 of the 2011 Judgment, which states that "the Convention has [sic] also has pending Counts based upon contractual claims and seeking contractual remedies," and that "nothing in this Judgment should be taken as either favoring or prohibiting such Counts or such remedies." The Foundation does not refer to this footnote in making its (non-)finality arguments. Moreover, with respect to the Convention's claims against the Foundation, the only other "Count[ ] based upon [a] contract claim[ ] and seeking contractual remedies" was Count VIII (seeking rescission and restitution), which is unambiguously dismissed as moot by the 2014 Judgment. While it may have been preferable for the 2014 Judgment to expressly delete footnote 7 of the 2011 Judgment, we do not interpret the survival of footnote 7 as preserving the Convention's rights to further litigate Counts VII and VIII, particularly since the Foundation has not made this argument.

[8] We presume that the trial court found that further proceedings were unnecessary on any contract-law claim, because the Convention had received all of the relief to which it was entitled on the legal theories on which the court relied in issuing the 2011 Judgment. *Cf. Bone v. Dir. of Revenue*, 404 S.W.3d 883, 887-88 n.5 (Mo. banc 2013) (judgment was final although trial court failed to make explicit factual findings or legal conclusions with respect to respondent-driver's due process or equal protection arguments, "because all requested relief was granted" on driver's other claims).

Like many of Defendants' arguments, the collection of arguments under the general heading of "standing" are at their most persuasive when viewed myopically and without regard to their context. Stepping back, however, these arguments are – and must be – wholly without basis. If a non-profit corporation amends its articles of incorporation in plain violation of another's right to approve or reject such amendments – and this amendment goes so far as to purport to eliminate that right in the future – can it really be the law in this state that the entity[ ] whose right was violated (and purportedly eliminated) cannot obtain relief in court? Does the Foundation genuinely contend that it answers to no one, except (perhaps) the Attorney General?

A party has standing to seek declaratory relief if it "has a legally protectable interest at stake." *Battlefield Fire Protection Dist. v. Springfield*, 941 S.W.2d 491, 492 (Mo. banc 1997).

As a general proposition members of the public and the class of a charity's potential beneficiaries lack standing to sue to allege that a charitable corporation or charitable trust is being mismanaged; instead, "'suits alleging mismanagement or misuse of public charitable funds by a charitable corporation must generally be brought by the Attorney General.'" *Burnside v. Gilliam Cemetery Ass'n of Gilliam*, 96 S.W.3d 155, 158 (Mo. App. W.D. 2003). The Missouri Supreme Court explained the reasons for this limitation in *State ex rel. Nixon v. Hutcherson*, 96 S.W.3d 81 (Mo. banc 2003):

The persons affected by such trusts are usually some or all of the members of a large and shifting class of the public. If any member of this class who deemed himself qualified might begin suit, the trustee would frequently be subjected to unreasonable and vexatious litigation. Often no individual can prove that he will necessarily benefit from the charity. All may be prospective or possible beneficiaries, but no one can be said to be a certain recipient of aid. In ultimate analysis it is the public at large which benefits, and not merely the individuals directly assisted. Obviously, there is good reason for vesting in a single authority the discretion and power incident to the enforcement of such trusts, rather than in leaving the matter to the numerous, changing, and uncertain members of the group directly to be aided.

*Id.* at 84 (citation omitted).

17

"An exception to this general rule exists," however, "where the litigant has a special interest in the charity." *Burnside*, 96 S.W.3d at 158.[9]

> The test to determine whether such an interest is special enough to confer standing is whether the person is entitled to receive a benefit under the trust that is not merely the benefit to which members of the public in general are entitled. A person also may have standing if he or she is entitled to a preference under the terms of the trust or if the person is a member of a small class of identifiable beneficiaries, or if he or she is certain to receive trust benefits. However, the mere fact that a person may in the discretion of the trustee become a recipient of the benefit under the trust does not entitle him to maintain suit for the enforcement of the trust.

*Hutcherson*, 96 S.W.3d at 84-85 (citations omitted).[10]

The Foundation's 1994 charter gave the Convention a "special interest" in the Foundation's operation and management. The charter stated that the Foundation was formed to serve "as the trust services agency of the Missouri Baptist Convention." The charter stated that the Foundation's Trustees were to be "nominated and elected in accordance with the procedures and practices of the Nominating Committee of the Missouri Baptist Convention." The charter required the Foundation to make quarterly reports to the Executive Board to permit the Executive Board to stay abreast of the Foundation's operations. The charter prohibited the Foundation from encumbering property, or distributing undesignated funds, without the Executive Board's prior approval. The charter also gave the Executive Board the right to receive the Foundation's

---

[9]    *See also*, *Hardt v. Vitae Found., Inc.*, 302 S.W.3d 133, 137 (Mo. App. W.D. 2009) ("At common law, only the Attorney General had standing to enforce the terms of a charitable gift. This rule applied to gifts both to charitable trusts and charitable corporations and was made primarily to prevent potential beneficiaries without a 'special interest' in the gift from 'vex[ing]' public charities with 'frequent suits, possibly based on an inadequate investigation.'" (quoting *Voelker v. St. Louis Mercantile Library Ass'n*, 359 S.W.2d 689, 695 (Mo. 1962)).

[10]    The Foundation argues that, under Chapter 352, only a charitable association's members may sue to challenge the actions of the association's board of trustees. In support of this argument, it cites *Pilgrim Evangelical Lutheran Church v. Lutheran Church, Mo. Synod*, 661 S.W.2d 833 (Mo. App. E.D. 1983); *Komanetsky v. Mo. State Med. Ass'n*, 516 S.W.2d 545 (Mo. App. 1974); and *McDaniel v. Frisco Employees Hosp. Ass'n*, 510 S.W.2d 752 (Mo. App. 1974). None of those cases suggests that a third party with a "special interest" in a charitable association lacks standing to challenge the actions of the association affecting that special interest.

net assets on its dissolution. Perhaps most significantly, to safeguard the other rights granted to the Convention and its Executive Board, the charter specified that it could only be amended "upon receiving the approval of the Missouri Baptist Convention of such amendment," based upon the Executive Board's "recommendation of approval."[11]

Based on the specific rights granted to the Convention and its Executive Board in the charter, and the provision protecting those rights from unilateral extinguishment by the Foundation, we find that the charter gave the Convention a "special interest" in the Foundation's operations. As the circuit court held, "[a]ny fair reading of the Charter . . . proves that the Convention had a unique and authoritative relationship to the Foundation, elevating the Convention's interests into the 'special' class, *i.e.*, above the interest of the public generally or even that portion of the public that the Foundation generally was intended to serve." Moreover, this lawsuit challenges management decisions which directly affect the Convention's special interests; as the circuit court emphasized, the Convention's claims against the Foundation are "directed at preserving and protecting [the Convention's special] rights and remedying the Foundation's purposeful violation of the same." The nexus between the Convention's "special interest," and the particular claims it is asserting in this action, demonstrates its standing to sue.[12]

---

[11]     The fact that the Foundation was prevented from unilaterally extinguishing the Convention's rights by amending the charter is a critical distinction between this case and *Executive Board of Missouri Baptist Convention v. Windermere Baptist Conference Center*, 280 S.W.3d 678 (Mo. App. W.D. 2009), where we held that the Convention lacked standing to challenge amendments to the articles of incorporation of another "breakaway" entity. In *Windermere*, we held that the Convention did not have enforceable rights under Windermere's organizational documents, "because Windermere's articles of incorporation were subject to unilateral amendment at any time." *Id.* at 691.

[12]     The Convention also cites *Farm & Home Savings & Loan Association v. Armstrong*, 85 S.W.2d 461 (Mo. banc 1935), for the proposition that the Convention's rights under the 1994 charter were "a mere privilege." *Id.* at 466. *Farm & Home* is not controlling here. It addressed a very different question: whether the Missouri Baptist General Association was in a principal-agent relationship with Hardin College, and was therefore liable for debts incurred by Hardin College, because of provisions of the College's charter which gave the Association various rights of oversight and control. *Farm & Home*

19

The Foundation's primary standing argument relies on provisions of Chapter 355 of the Revised Statutes, specifically §§ 355.141 and 355.606. Those provisions are inapplicable here. The Convention specifically challenged the First 2001 Amendment, whereby the Foundation purported to accept the provisions of Chapter 355. The circuit court held that the First 2001 Amendment was unlawful and void, and it thereby nullified the Foundation's attempt to make itself subject to Chapter 355. We fail to see how the Foundation can "bootstrap" an argument that Chapter 355 prevents the Convention's suit, when the suit challenges the actions by which the Foundation purportedly made itself subject to Chapter 355. In a similar vein, the Foundation might argue that the Convention lacked a "special interest" in the Foundation's operations, because the Second 2001 Amendment eliminated the Convention's rights derived from the 1994 charter. The obvious answer to such an argument, of course, would be that the Second 2001 Amendment could not defeat the Convention's standing to challenge the Second 2001 Amendment itself. Any restrictions on third-party standing contained in Chapter 355 of the Revised Statutes are irrelevant here.[13]

The Foundation's second Point is denied.

### III.

The Foundation's third Point contends that the circuit court erred in granting summary judgment on portions of Count VII because there were material facts in dispute.

does not address the Association's ability to enforce its rights under the College's charter, if the College chose to disregard them; that, of course, is the issue here.

[13] We recognize that, at the time of its adoption of the Second 2001 Amendment, the Foundation purported to be a Chapter 355 Nonprofit Corporation. As the trial court's 2014 Judgment recognizes in rejecting the Foundation's Motion for Summary Judgment on Mootness, the voiding of the First 2001 Amendment, and the restoration of the 1994 charter, "has the effect of voiding every other change to the articles which has been attempted by the Defendant," since none of those later amendments comply with the consent provision, or with the requirement of § 352.070, RSMo that the circuit court approve charter amendments.

In its page-and-a-half argument on this Point, the Foundation identifies by number 31 paragraphs of the Convention's Statement of Undisputed Facts which the Foundation purportedly controverted, and lists an additional 20 paragraphs from its Statement of Additional Material Facts in Dispute, which the Convention controverted. Based on these purportedly disputed fact statements, the Foundation argues that summary judgment was inappropriate, and must be reversed.

The problem with the Foundation's argument is that its Brief does not describe the facts alleged in any of the listed paragraphs, and makes no argument concerning the materiality of the factual statements it lists; instead, it merely identifies those factual statements by paragraph number and record citation. Summary judgment is not precluded, however, merely because the parties dispute some of the facts; the facts in dispute must be material to the legal basis on which the movant seeks summary judgment. "Only genuine disputes as to *material* facts preclude summary judgment. A material fact in the context of summary judgment is one from which the right to judgment flows." *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 453 (Mo. banc 2011) (emphasis added; citations omitted). "Only those factual disputes that might affect the outcome of the case under the applicable law are considered 'material' for purposes of summary judgment." *Tonkovich v. Crown Life Ins. Co.*, 165 S.W.3d 210, 214 (Mo. App. E.D. 2005).

The circuit court's entry of summary judgment depends on a limited number of facts: that the Foundation adopted the 1994 charter; that the 1994 charter gave the Convention and its Executive Board various rights, including particularly the right to approve charter amendments; that the Foundation sought and obtained circuit court approval for the First 2001 Amendment, which purported to accept the provisions of Chapter 355, without notice to, or the approval of, the Convention or its Executive Board; and that the Foundation then adopted the Second 2001

21

Amendment, which purported to eliminate all of the Convention's and Executive Board's rights derived from the 1994 charter, again without notice to, or approval from, the Convention or the Executive Board. The Foundation does not contend that any of those facts are controverted, and it identifies no other material fact, which *was* controverted, on which the circuit court's ruling depends. Without a more developed argument by the Foundation, Point III is denied.

**IV.**

The Foundation's fourth Point argues that summary judgment was improper because the Convention "failed to set forth undisputed facts to negate" a number of the Foundation's affirmative defenses.

The 2011 Judgment dismissed the Foundation's affirmative defenses with the following explanation:

> Though the Foundation asserts twenty-seven so-called "affirmative defenses," even a casual glance demonstrates that most of these are not "affirmative defenses" at all and some that might be are not supported by an adequate "short and plain statement of the facts" as required by Rule 55.08. Instead, most of these "affirmative defenses" are simply retreads of the same legal arguments advanced – and rejected – above. Others assert legal arguments that have been rejected in earlier appeals in this case or that are no longer tenable under current law (*i.e.*, attacks as to this Court's "subject matter jurisdiction"). Finally, several of these "affirmative defenses" by their own terms simply do not apply to the Convention's Count VII at issue in this motion. Suffice to say that the Court has reviewed each of these "affirmative defenses" and holds that none of them pose an obstacle to this Judgment in favor of the Convention based upon the uncontested material facts contained in the summary judgment record.

Although the Foundation's Brief lists and briefly describes each affirmative defense which it contends the Convention failed to adequately address, it does not respond to the trial court's conclusion that its affirmative defenses were not adequately supported by a "short and plain statement of the facts" on which the affirmative defense depended, as required by Rule 55.08. Unless the Foundation's affirmative defenses complied with this pleading requirement,

22

the Convention was under no obligation to address them in its summary judgment motion. As we recently explained:

> It is true that a plaintiff desiring a grant of summary judgment must establish a right to judgment as a matter of law, which includes the obligation to establish that there is no genuine dispute as to the existence of facts necessary to support a defendant's affirmative defense. This presumes, however, that an affirmative defense has been properly pled. Rule 55.08 requires a "pleading that sets forth an affirmative defense [to] contain a short and plain statement of the facts showing that the pleader is entitled to the defense . . . ." Bare legal assertions are insufficient to plead an affirmative defense. A pleading that makes a conclusory statement and does not plead the specific facts required to support the affirmative defense fails to adequately raise the alleged affirmative defense, and the alleged affirmative defense fails as a matter of law."

*Reverse Mortg. Solutions, Inc. v. Est. of Hunter*, 479 S.W.3d 662, 668 (Mo. App. W.D. 2015) (citations and internal quotation marks omitted).

The trial court's statement that the Foundation's affirmative defenses were not adequately pleaded was an independently-sufficient basis to reject those defenses. By failing to address this independent ground for the circuit court's rejection of its affirmative defenses, the Foundation has failed to establish reversible error. *See*, *e.g.*, *Knight v. Con-Agra Foods, Inc.*, 476 S.W.3d 355, 358 (Mo. App. W.D. 2015) (quoting *City of Peculiar v. Hunt Martin Materials, LLC*, 274 S.W.3d 588, 590-91 (Mo. App. W.D. 2009)).

In addition, although the Foundation briefly describes the defenses on which its argument relies, it fails to identify the *factual assertions* relevant to these affirmative defenses which the Convention failed to negate. The affirmative defenses identified by the Foundation (Convention's incapacity to contract; failure of consideration; Convention's rights terminable at will; failure to state a claim; the statute of frauds; failure to adequately allege elements of a contract; adequate remedy at law) appear to raise principally *legal*, as opposed to *factual*, issues. Although the Foundation's argument under Point IV asserts that the judgment should be reversed because the Convention's "motion for partial summary judgment failed to set forth undisputed

23

facts to refute these affirmative defenses," it is unclear what undisputed facts would have responded to these defenses (or, seen from another perspective, what *disputed* facts *prevented* the grant of summary judgment on these defenses). Once again, given the nature of the Foundation's argument, Point IV is denied.

## V.

The Foundation's fifth and final Point argues that the circuit court erred in awarding the Convention attorney's fees, because this case does not involve the sort of "special circumstances" which would justify a fee award.

The Foundation's challenge to the fee award is moot. In motions practice in this Court concerning a stay pending appeal, the Foundation argued that a supersedeas bond was unnecessary because no monetary relief was at issue on appeal. The Foundation explained:

> Respondents chose to settle all monetary aspects of their claims with the Foundation's insurer. *See* Exhibit 1, December 19, 2014 Partial Settlement Agreement and Release. Therein, Respondents released the Foundation from all past, present, and future claims for any kind of money damages, attorneys' fees, costs, or other type of monetary award. *Id.* at pp. 2-3. Accordingly, the "Final Judgment" no longer has a monetary component, and Respondents' arguments and case law concerning stays of money judgments are irrelevant.

Further, the Foundation represented in later correspondence to the circuit court that "Counsel for [the Convention] is correct that the claim for attorney fees has been compromised . . . ."

Given the Foundation's own representation to this Court that the Convention has "released the Foundation from all past, present, and future claims for . . . attorneys' fees," and its representation to the circuit court "that the claim for attorney fees has been compromised," there is presently no live dispute between the parties concerning the Convention's entitlement to attorney's fees. The issue is moot, and we will not address it. *Cf. City of O'Fallon v. CenturyLink, Inc.*, No. ED102562, 2016 WL 1229894, at *5 (Mo. App. E.D. March 29, 2016) (appellant's voluntary satisfaction of judgment for attorney's fees mooted appeal of fee award).

24

At oral argument, the Foundation argued that, despite the Convention's release of its attorney's fee claim, the Foundation was nevertheless aggrieved by the circuit court's *factual findings* that the Foundation had engaged in acts of intentional misconduct which constituted "special circumstances" justifying a fee award. Without a live dispute as to *the relief* ordered by the circuit court, however, the Foundation's disagreement with the court's *factual findings* is not sufficient to give it standing to appeal.

In a similar circumstance, this Court has held that a party who disputed the circuit court's factual findings, but not its judgment, did not have standing to appeal. In *Wright v. Rankin*, 109 S.W.3d 696 (Mo. App. S.D. 2009), the circuit court denied relief to plaintiffs under the Sunshine Law, based on its conclusion that certain public officials had not *intentionally* violated the statute. Although that judgment was affirmed on appeal, the officials sought appellate review of the circuit court's statement that the officials "'violated the terms and provisions of the "Sunshine Law" . . ., but that those violations were not purposely.'" *Id.* at 699 (quoting circuit court's judgment). The Court held that the officials were not "aggrieved," and therefore had no standing to challenge the trial court's conclusions, where they did not challenge the relief ultimately afforded by the court.

> At oral argument, defendants suggested the language of the trial court could be perceived by the public as a determination that defendants' actions had not been in accordance with requirements of Chapter 610; that this possibility warranted this court's review of the trial court's findings of fact and conclusions of law. The language about which defendants complain prefaced the trial court adjudication that no intentional violation of the Sunshine Law occurred and that plaintiffs' request for imposition of civil sanctions pursuant to § 610.027.3 was unwarranted. That determination was favorable to defendants. The judgment that was rendered was, in effect, a judgment for defendants.

> Public perception that a judicial act has a meaning other than the legal determination it manifests is a remote consequence, not a grievance for which appellate review lies. As used in § 512.020, "aggrieved" means "suffering from an infringement or denial of legal rights." The judgment does not infringe on or deny defendants' legal rights. Defendants are not aggrieved parties for purposes

25

of appeal.  This court, therefore, lacks jurisdiction to consider the issue defendants attempted to raise.  Their appeal will be dismissed.

*Wright v. Rankin*, 109 S.W.3d 696, 699-700 (Mo. App. S.D. 2003); *see also Webster v. Otwo I, Inc.*, 296 S.W.3d 501, 505 (Mo. App. W.D. 2009) (defendant which obtained dismissal with prejudice of personal-injury action on the basis of plaintiffs' lack of standing could not obtain appellate review of *dicta* in circuit court's judgment that another party might have standing to pursue the same claims in the future); *McKnight v. Midwest Eye Inst.*, 799 S.W.2d 909, 918-19 (Mo. App. W.D. 1990) (plaintiff-employee who obtained ruling that restrictive covenant in employment agreement was unenforceable due to employer's material breach of the agreement, could not appeal from trial court's finding that the restrictive covenant was otherwise valid).

Given the Convention's release of its attorney's fee claim, the Foundation is no longer aggrieved by the circuit court's award of such fees, even though it may object to the findings upon which that fee award was based.  Point V is denied as moot.

### Conclusion

The judgment of the circuit court is affirmed.

_____
Alok Ahuja, Chief Judge

All concur.